Matthew M. Levy, J.
(I)
This is a suit in equity and at law, based upon an oral employment agreement. The defendant is a phonograph record company which sells its product under a label called 44 Bang Records ”. For first and second causes of action, the plaintiff alleged that, on or about April 30, 1965 the defendant hired the plantiff for the period beginning with that date and ending the 29th day of April, 1966, during which time the defendant agreed to pay him the weekly sum of $200 and, in addition, 1% of the net sales of records sold by the defendant from master recordings made by it, which percentage plaintiff characterizes as an 44 override ” and defendant as a “ bonus (Much emphasis was placed by the respective parties on the terminology as to the 1% payment agreed upon — 44 override ” or £ 4 bonus ” — but the language used is, I hold, not conclusive in a consideration of the substantive arrangement between the parties.) The plaintiff further asserted in the first count that, on December 10,1965, he was wrongfully discharged, and that at that time he was not paid all of the 1% of the net sales due him, and seeks an accounting therefor. In his bill of particulars, the plaintiff alleged that he was to receive $25 per week as an advance against the 1%. In his second cause of action, the plaintiff alleged that the discharge occurred on December 15,1965, and that the defendant failed and refused to pay the plaintiff his last week’s salary in the sum of $200.
In its amended answer the defendant denied the material allegations of the complaint, and affirmatively pleaded that the plaintiff breached the agreement by setting up his own record company (“ Boom Records ”) in order to trade upon the name and reputation of the defendant’s 44 Bang Records ”; that this occurred while the plaintiff was still employed by defendant; that it was the plaintiff who wrongfully terminated his employment; and that he took with him the defendant’s confidential lists of customers, disc jockeys and distributors. The defendant further pleaded by way of a first counterclaim, that the 1% *28 of net sales (the answer uses the term “ receipts ”) claimed by the plaintiff was not additional compensation, but a ‘1 bonus ’ ’ that was payable only if the plaintiff remained in defendant’s employ for a period of one year. In this regard, the defendant alleged that it made advances to the plaintiff on account of the bonus in the sum of $3,985 in anticipation that the plaintiff would continue to work for the defendant for the full one-year period, and that since the plaintiff terminated his employment prior to the end of the contractual date, the defendant demanded judgment for the return of these advances. In its second counterclaim, defendant prayed for judgment in the amount of $50,000 as damages for the asserted appropriation of trade secrets as aforesaid. In a third counterclaim, the defendant asked for judgment in the sum of $300, allegedly loaned by the defendant to the plaintiff.
By stipulation the plaintiff was permitted to amend his complaint so as to allege that the discharge occurred on December 3, 1965, and to allege that for the year commencing April 30, 1965 and ending April 29, 1966, the defendant sold and delivered records for which the plaintiff was entitled to 1% of such sales. The defendant was permitted to amend its answer so as to interpose the defense of the Statute of Frauds. Upon the trial, the plaintiff testified that the contract was for no fixed term and that quarterly statements and payments were to be delivered and made to him to cover the override. The plaintiff duly moved to conform the pleadings to the proof, and the motion is granted.
The plaintiff moved to dismiss the defendant’s second counterclaim based upon the plaintiff’s alleged breach in failing to render exclusive services and upon the plaintiff’s unfair competition. This motion was granted; and there is no ground for reconsideration. It is true that, in or about the month of November, 1965, the plaintiff entered into discussions with ABC-Paramount Records, with the view of obtaining employment. But, under the circumstances of this case, the plaintiff had a right to seek another position. His engagement with the defendant was at will, terminable by either party (see section II, infra). The plaintiff did not appropriate any of the defendant’s trade secrets, and he did not in any respect breach any obligation on his part owed the defendant.
Decision was reserved on the plaintiff’s motion for judgment in his favor on both of his causes off action, as well as on the defendant’s motion to dismiss the complaint on the merits. I also reserved decision on the plaintiff’s motions: (1) to dismiss *29 the first counterclaim (for return of the $3,985 allegedly advanced on the purported year-end “ bouns ”); (2) to dismiss the third counterclaim (for the sum of $300 allegedly loaned to plaintiff); (3) to dismiss the first affirmative defense (charging that the plaintiff breached the agreement by leaving defendant’s employ); and (4) to dismiss the added defense of Statute of Frauds.
The basic issues of fact to be resolved, then, are the nature of the oral agreement in terms of its duration, its substance, and the meaning of and conditions under which the 1% of sales (or net sales) was payable to the plaintiff. The crucial issue of law to be determined is the applicability of the Statute of Frauds. Also to be disposed of as matters of fact are whether the $300 advanced by the defendant to the plaintiff was a loan or a payment on account of the aforesaid override and whether there is the sum of $200 owing by defendant to plaintiff as salary.
When the cause was tried, the parties stipulated, subject to the approval of the court, to waive the submission or rendition of findings of fact and conclusions of law. This stipulation is approved; and this memorandum is the decision of the court (CPLE 4213, subd. [b]).
(II)
Since I must pass upon the facts, as well as the law, in this non-jury trial, I advert first to a vigorously presented adversary submission involving the determination of the facts and the contentions of the parties in that regard.
The plaintiff argues that I must ignore any prior inconsistent statements appearing in his earlier pleadings, upon the ground that they were duly amended. On the other hand, the defendant, in its posttrial brief, contends that the plaintiff is bound by what he has thus pleaded. Both parties overlook the crucial point on this issue.
In Van Valkenburgh, Nooger & Neville, Inc. v. John F. Rider Publisher, Inc. (46 Misc 2d 321, 322 [1965]), I had occasion to say that 1‘ ‘ When served, an amended pleading takes the place of the original, which is then out of the case in its capacity as a pleading’” (citations omitted). But that is not all of the applicable legal principle. I also said (p. 323): “It has been stated that, upon the service of an amended pleading, the ‘ previous pleading is dead and the case stands as if the pleading had never been served ’ (Westinghouse Elec. Corp. v. Lyons, 281 App. Div. 820). But, in my view, this is more picturesque than accurate. For example: cannot the superseded pleading be used as an admission against interest? Cannot it be utilized on *30 cross-examination of the party who served it? [other and presently irrelevant questioned examples omitted]. Citation of volume and page is unnecessary to obtain appropriate responses to the inquiries I have put. Whether the answers are in the affirmative or the negative, they lead to the conclusion that it is not correct to say that, as to every facet of the litigation, ‘ the case stands as if the [earlier] pleading had never been served.’ The previous pleading is not truly ‘ dead ’ — it simply cannot be used as a base for the framing of the issues in the case. In other aspects, it may be very much alive, and we are here concerned with one of such aspects.”
When Van Valhenburgh went to the Appellate Division, there was modification of the order in another respect (the matter of priority of an examination before trial), but there was basic agreement with the precept hereinbefore expressed by me, in the following language of the reviewing court: 1 ‘ When a plaintiff serves an amended complaint, it supersedes the original complaint, and the nature and subject matter of the action and what is ‘ material and necessary ’ in the prosecution thereof depend upon the allegations of the amended complaint ” (24 A D 2d 437, 438 [1965]; see, also, Polahoff v. Hill, 261 App. Div. 777, 780 [1941]; 21 N. Y. Jur., Evidence, § 325).
The upshot of this is that the superseded complaint is, as a matter of law, no longer in the case as a conclusive and impregnable delineation of the triable and determinable substantive issues, but that what the plaintiff alleged therein — upon due presentation, proof and cross-examination upon the trial as evidence (Keller v. Morton, 63 Misc. 340, 341 [1909]) —would still be a factor affecting weight and credibility.
I have not ignored the inconsistencies thus indicated, but my factual holding is that, taking all the evidence into account, the plaintiff’s testimony upon the trial presents the true picture of the transaction between the parties.
In the light of the proof submitted at the trial, it is preponderately credible and I find, that on April 30, 1965, the plaintiff was engaged by the defendant to promote the sale of the defendant’s records, bearing the “ Bang ” label; that such hiring was to commence on the same day, and that the employment was terminable at will. The defendant agreed to pay the plaintiff, for his services, a weekly salary of $200, plus an override of 1% of the defendant’s net sales during the term of service, payable quarterly. I also find that the plaintiff was dismissed by the defendant on December 3, 1965, some seven months after the plaintiff had commenced employment. As the contract was *31 terminable at will by either party, I need not determine whether the discharge was or was not for cause.
At no time prior to the conference in December of 1965, when the plaintiffs tenure was terminated, was any agreement made between the parties as to how long the plaintiff would remain in defendant’s employ; nor was any outside time limit established as a condition precedent to the plaintiff’s entitlement to the 1% of the net sales. I find that it was agreed that the defendant would make periodic payments thereof each quarter, and furnish the plaintiff with quarterly statements. Although these were not rendered, the defendant, beginning with August 19, 1965 and at weekly intervals thereafter, delivered to the plaintiff 12 checks in the amount of $25 each on account of the 1% override and, on November 30, 1965 paid the plaintiff an additional $3,500 by check specifically noted to be an “ advance on the 1% bonus deal ”.
I conclude that the plaintiff’s compensation, including the 1% net sales override, was agreed to be considered as earned for the period of the plaintiff’s actual employment. The testimony elicited at the trial does not sustain the defendant’s argument that the plaintiff must remain in the defendant’s employ for one full year to receive any part of the 1% net sales override. This contention is not consonant with the defendant’s own actions in making the payments which were in fact received by the plaintiff from the defendant.
(Ill)
The defendant relies principally upon the Statute of Frauds. In my opinion, that reliance is misplaced.
I have found on the facts that the 1% of net sales to which the plaintiff is entitled represented moneys payable to him as additional wages and was not conditioned upon his remaining in the defendant’s employ for a specified period of time. I have also found that this override was to be paid to the plaintiff on a quarterly basis and that he was to receive a statement of account together with each payment. A contract at will terminable by either party does not come within the proscription of the statute (Nat Nal Serv. Stations v. Wolf, 304 N. Y. 332, 336 [1952]). “ Contracts of employment beginning in praesenti and if [of] indefinite duration are invariably held not to be within the statute of frauds requiring contracts not to be performed within a year to be in writing, since such contracts may be terminated by the parties at any time, and hence are susceptible of performance within a year, within the contemplation of the statute. ” (56 N. Y. Jur., Statute of Frauds, § 33). Indeed, if perform *32 anee of an agreement be possible within the year, however unlikely or improbable that may be, the agreement does not come within the proscription of the statute (see Lens v. World-Wide Autos. Corp., 9 Misc 2d 32 [1957], affd. 5 A D 2d 1051).
Of course, an oral contract falls within the interdiction of the statute if the employee is to receive commissions on orders placed with his employer after the termination of his employment and that is agreed to come about more than a year after the engagement (see Martocci v. Greater N. Y. Brewery, 301 N. Y. 57, 62 [1950]; Cohen v. Bartgis Bros. Co., 264 App. Div. 260 [1942], affd. 289 N. Y. 846). However, that is not the situation in the case at bar. The override was to cease when the employment relationship was terminated, and that might, under the terms agreed upon, occur at any time — before or after a year of the association. The evidence clearly establishes that no such rights were to survive the termination of the contract between these parties. It is the possibility that performance can be completed within one year that takes the case out of the Statute of Frauds (56 N. Y. Jur., Statute of Frauds, § 18; Nat Nal Serv. Stations v. Wolf, 304 N. Y. 332, 336, supra; General Obligations Law, § 5-701; see, also, Raes v. So-Lite Furniture Corp., 4 A D 2d 851 [1957]; cf. Zupan v. Blumberg, 2 N Y 2d 547 [1957]).
In Raes (supra), the complaint alleged an agreement whereby defendant employed plaintiff at a fixed weekly salary and traveling expenses “ plus one (1%) percent of the gross sales of the company during the period of his employment, said percentage to be computed at an annual rate ” (emphasis supplied). That is not the type of agreement sued upon here, either as alleged or proved; but even if it were, the court’s response is decisive: “ The fact that the employee’s earnings were to some extent based on the employer’s annual sales merely provides a method of computation having no bearing on the duration of the contract ’ ’.
In Dukes of Dixieland v. Audio Fid. (19 A D 2d 872 [1963]), the court there emphasized that, under the allegations of the fourth cause of action (the count relevant in the case at bar), ‘1 the oral agreement contemplated the reproduction, publication and public performance of plaintiff’s musical arrangements and payments of royalties and related income for an unlimited period of time, beyond the period of one year ”, citing Cohen v. Bartgis Bros. Co. (264 App. Div. 260, affd. 289 N. Y. 846) and Elsfelder v. Cournand (270 App. Div. 162) (emphasis supplied).
Nor is Hausen v. Academy Print. & Specialty Co. (34 A D 2d 792, 793 [1970]), applicable to the facts here, for there too, *33 ‘ ‘ Defendant’s liability under the contract would continue as long as the customers procured by plaintiff purchase and make payments to defendant ’ ’.
(IV)
The defendant contends further that the plaintiff’s claim is barred because of the Statute of Frauds in that the final payment by the defendant to the plaintiff could not actually be computed and made within the year subsequent to the time of the oral agreement of engagement. The argument is that since the plaintiff’s bonus or override of 1% on net sales could not be determined until after the end of the employment — which would take beyond the year — the contract was not performable within the limited statutory period.
That phase of the argument may perhaps be best considered by way of illustration projected by the American Law Institute. Let us assume that “ A [orally] promises B to pay B $5000 in one month, in return for which B promises orally to render a stated performance during the whole of the ensuing two years. A pays the $5000 as agreed. B then refuses further performance.” (Restatement, Contracts, § 198, p. 265 [1932].) In such case, while “ The weight of authority supports the proposition that if performance on one side can be fully executed within a year, and is so executed, the contract is not within the Statute, and in many cases the mere fact that it is executed on one side withdraws it from the Statute” (3 Williston, Contracts [3d Jaeger ed.], § 504, p. 626 [1960]). As the Restatement declares: 1 ‘ Where any of the promises in a bilateral contract cannot be fully performed within a year from the time of the formation of the contract, all promises in the contract are within [the statute], unless and until one party to such a contract completely performs what he has promised. When there has been such performance, none of the promises in the contract is within [the statute].” (Restatement, Contracts, § 198, pp. 262, 265 [1932]).
I recognize, however, as does Professor Williston, that there are ‘i numerous decisions which seem supported by another construction of the Statute which hold that unless the contract from its inception is fully performable within a year on both sides, it is within the Statute; and if after full performance on one side, performance on the other side still cannot take place within a year, the Statute is applicable; and any redress which can be obtained for either full or partial performance must be based on principles of quasi contract.’’ (3 Williston, op. cit., § 504, p. 628).
And I recognize further that the New York cases seem not to follow the American Law Institute view (see Broadwell v. Get- *34 man, 2 Denio 87 [1846]; Day v. New York Cent. R.R. Co., 51 N. Y. 583 [1873], 89 N. Y. 616 [1882]; Hubbard v. Hubbard, 151 App. Div. 174 [1912]; Matter of Chamberlain, 146 App. Div. 583 [1911], affd. 204 N. Y. 665 [1912]; Tyler v. Windels, 186 App. Div. 698 [1919], affd. 227 N. Y. 589 [1919]; Suren v. Handel, 205 App. Div. 829 [1923]). Indeed, in Smith v. Graham (277 App. Div. 1116 [1950]), the Appellate Division in this Department specifically rejects the Bestatement on this point. The court affirmed a judgment on the authority of Tyler v. Windels (supra). In so doing, the court said: “ We are not unmindful of the doctrine enunciated in Bestatement of the Law of Contracts (Vol. 1, § 198, and particularly illustration 9 thereunder; N. Y. Ann. to Bestatement, Contracts, § 198, p. 95); see, also, Williston on Contracts (Vol. 2, Rev. ed. § 504, pp. 1469-1472).”
In any case, the present situation is readily differentiated from the usual applicability of the New York rule.
In Martocci v. Greater N. Y. Brewery (301. N. Y. 57, 62-63, supra) the agreement there sub judice was within the statute because the contract terms were such. that the relationship between the parties would continue beyond a year. The Court of Appeals stated that “ the endurance of the defendant’s liability is the deciding factor ” (p. 63). In so holding, the court (p. 62) set forth the following precept which is apposite: “ If the terms of the contract here had included an event which might end the contractual relationship of the parties within a year, defendant’s possible liability beyond that time would not bring the contract within the statute ’ ’. In my view, the ‘ ‘ event ’ ’ adverted to is implicit in every contract that is terminable at the will of either party. Of course, there remains the responsibility on the defendant’s part with respect to the determination of the amount of override due the plaintiff on net sales made while the plaintiff was in defendant’s employ, and that obligation may (and in this case does) extend beyond the time that the paintiff’s employment ceased. However, that aspect concerns a duty which came into fruition prior to the passing of a year and relates to past performance only. The fact that the amount of the payment due may not be ascertained until some future time creates no new obligations. Such future satisfaction of a pre-existing liability involves the matter of computation only and is merely mechanical in its application (Raes v. So-Lite Furniture Corp., 4 A D 2d 851, supra).
Briefstem v. Rotondo Constr. Co. (8 A D 2d 349 [1959]) is urged upon me by the defendant. I do not overlook the expres *35 sion in the opinion to the effect that “ Not only would the corporate profits [to which plaintiff there claimed to be entitled under the oral agreement], if ‘ determined by usual accounting methods ’ not be ascertainable until a period beyond the year during which the contract would run, and hence not be payable or performable within the year ” (p. 350). But that is not the same as the simple arithmetic ascertainment of net sales during the period here involved, as distinguished from gross sales. Moreover, Brief stein involved a motion on the pleadings; and the court itself points out that “ a more basic objection on this ground [than the one hereinbefore quoted] seems to lie in the fact that the obligation [as expressed in the complaint attacked for insufficiency to state a cause of action is] to pay 25% of the corporate profits [and] is not in actual terms limited to a year, or to the year the contract runs, or to any year or any period. It is merely set out that the percentage is to be ‘ paid at the termination of the said period of employment ’. The time of payment does not here fix the time area of liability for a share of profits ”. (pp. 350-351).
Of course, that is not the situation in the case at bar, as interestingly pinpointed in a memorandum decision of the Appellate Division, First Department. In Murray v. Elisabeth Arden Sales Corp. (20 A D 2d 772 [1964]), defendant, on reversal, obtained summary judgment. The court said, succinctly, that “ the [plaintiff’s] attempt to bring the action within the rule of Raes v. So-Lite Furniture Corp. (4 A D 2d 851) on the theory that this was a hiring at will and the terms fixing the commission were merely descriptive of the method of computation, does not accord with plaintiff’s own version of the conversation constituting the agreement ” (p. 773; emphasis supplied).
In the instant case, the plaintiff was paid a substantially major portion of the override due him for the two quarterly periods ending October 30, 1965; although he did not receive the quarterly reports promised him. He was discharged on December 3, 1965, and he is also entitled to the override for this intervening period. Any adjustments because of subsequent returns by customers, although, of course, to be made thereafter, come within the category of what I have called the process of mechanical computation. (See Nesson v. Moes, 215 Cal. App. 2d 655 [1963]; Marek v. Knab Co., 10 Wis. 2d 390 [1960].)
(V)
My finding is that there is due and owing to the plaintiff a balance on the 1% override for the period through December 3, *36 1965, inclusive, the amount of which is not known. Accordingly, I direct that the plaintiff shall have an accounting for the period that he was actually employed by the defendant, less credit to the defendant for the sums advanced to the plaintiff on the 1% net sales override. The net sales are to be arrived at by deducting from the gross sales the amount reflecting returns of records previously sold by the defendant to dealers, plus such other appropriate allowances made by the defendant to such dealers. The defendant will serve and file a verified account, to which the plaintiff may file exceptions, and a reference will be directed to take and state the account.
The plaintiff’s claim that he is owed wages in the sum of $200 for the last week of service is sustained by the testimony presented. I find, as to the counterclaim, that the $300 loaned by the defendant to the plaintiff was not converted into a bonus. Thus, there is also due and owing to the plaintiff one week’s salary in the sum of $200, less the standard deductions, and there is due and owing to the defendant by the plaintiff the sum of $300, representing the unpaid loan.