OPINION OF THE COURT
Joan B. Lefkowitz, J.
In a declaratory judgment action, plaintiff moves for an order disqualifying defense counsel from representing the insurer and the named insured. Plaintiff contends that defense counsel is representing adverse interests in violation of public policy as set forth in the Code of Professional Responsibility. Defense counsel sought to be disqualified argues that there is no conflict of interest in the dual representation, that plaintiff lacks standing to make this motion since defense counsel never represented him nor had a fiduciary relationship with him and, if standing exists and a conflict of interest is found, the parties represented by defense counsel have consented to the representation notwithstanding the conflict.
*431 FACTUAL BACKGROUND
Some time in 1989, Wayne Degroat’s mother complained that her son, then 11 years of age and a residential student at the New York School For The Deaf (hereinafter referred to as the School) had been sexually assaulted on school premises during the period September 1988 through March 1989 by staff members. The District Attorney investigated the allegations and found no proof of staff misconduct. The New York State Department of Social Services investigated and specifically found that no charges against Charles Booth, a staff employee of the School, were warranted.
In December 1990, purportedly by summons only, an action was commenced in the Supreme Court, Westchester County, entitled Degroat v New York School For Deaf (index No. 13034/ 91).[1] In October 1991, a supplemental summons and complaint were served which added two party defendants to the action, John F.X. Doonan, a former employee of the School, and Charles Booth (plaintiff herein). The complaint alleged causes of action against the School for injuries Wayne Degroat, an infant student at the School, suffered from sexual assaults by Messrs. Doonan and Booth. The gravamen of the cause of action against the School sounded in negligent hiring, retention and supervision. Three causes of action were asserted against Mr. Doonan and three against Mr. Booth for sexual assault, negligence and assault without intent to cause injury.
Defendant Continental Insurance Company (now known as CNA Insurance Company but hereafter referred to as Continental) provided a defense to the School, through the law firm of Beesecker & Koors, under a reservation of rights by reason of a sexual molestation exclusion in the general liability policy issued to the School. Continental refused to provide a defense for Mr. Booth who retained counsel to defend him.[2] Doonan defaulted. Booth has expended $41,000 to date in defending the Degroat action.
In April 1995, Booth commenced the subject declaratory judgment action in which he seeks an adjudication of his rights *432 as an insured under the general liability policy. He primarily contends that he is entitled to "bodily injury” coverage as an employee of the School (Policy CG 0 0 01 11 85, Section II [2] [a]; also New York Board of Education Endorsement 000013);[3] that the sexual molestation exclusion found at Bates Stamp pages 000004 and 000051 is inapplicable as it was not countersigned as required by the policy language; and that Continental failed to timely notify the injured party (Degroat) of its disclaimer, so that coverage exists. In a second cause of action against the School, Mr. Booth alleges that representations were made by School officials that claims of sexual molestation, even if frivolous, were covered by appropriate insurance. In a third cause of action against the School, a claim for breach of contract is made regarding the nonexistence of such coverage. Wayne Degroat, his mother and Mr. Doonan are also named as defendants, but no specific relief is sought against them.[4]
In the underlying personal injury action, the School’s answer denies that sexual molestation occurred. In the declaratory judgment action, the insurer and the School allege that no coverage exists by reason of the sexual molestation exclusion and by way of an affirmative defense of unclean hands allege that Mr. Booth committed sexual assaults on the infant.
In June 1995, Continental and the School moved for summary judgment. Plaintiff cross-moved for similar relief and for disqualification of movants’ defense counsel. In response to the cross motion, said defense counsel produced an affidavit from Michael Leary, Director of Fiscal Affairs of the School. That affidavit referred to the insurer’s providing a defense in the Degroat action and its prior request of the School to permit it to be defended by the same firm as was defending Continental in the action for declaratory judgment. The affidavit states in part:
*433 "3. * * * Because the school did not perceive any conflict with such a joint defense, the School agreed to have Simpson, Thacher & Bartlett defend it in this action.
"4. The School still believes there is no conflict with such a joint defense.”
In July 1995, a supplemental amended complaint was served in the Degroat action. It added two additional causes of action for negligent supervision of Booth by Doonan and of Doonan by Booth. Presumably, amended answers were served but copies have not been submitted herein.
In view of the amended complaint, the parties withdrew the motion and cross motion in the declaratory judgment action. Subsequently, in August 1995, plaintiff moved again to disqualify Simpson, Thacher & Bartlett. Defense counsel opposes the motion for the reasons expressed at the outset of his opinion and also notes that prior to the original representation of the School herein and after the cross motion to disqualify, the School, as before, was counseled by its regular outside attorney, Eugene Farabaugh, Esq., of Milbank, Tweed, Hadley & McCloy, who advised the School to permit Simpson, Thacher & Bartlett to represent it and to continue to do so.
STANDING TO SUE
Standing to sue is a party’s ticket to ride or recognition of a party’s right to proceed with presentment of a claim for adjudication. (Black’s Law Dictionary 1405-1406 [6th ed].) Standing principles "are in the end matters of policy, [and] should not be heavy-handed”, so that where the petitioning party has a legally cognizable interest, standing exists. (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413 [1987]; 82 NY Jur 2d, Parties, § 7.)
Simpson, Thacher & Bartlett cite several cases for the proposition that one who did not have a prior or current relationship with counsel sought to be disqualified lacks standing to present the issue. (See, e.g., Matter of Reichenbaum v Reichenbaum & Silberstein, 162 AD2d 599 [2d Dept 1990], lv dismissed 77 NY2d 873 [1991]; Rowley v Waterfront Airways, 113 AD2d 926 [2d Dept 1985].) While the cited cases are distinguishable, in that in Matter of Reichenbaum (supra), the Court held that disqualification was not warranted on the merits and in Rowley v Waterfront Airways (supra), the Court dealt with the nonexistence of imparting confidential information, the general rule must be recognized that absent an attorney-client relationship standing is generally lacking on disqualification mo *434 tions. (Corbelli v General Acc. Ins. Co., 198 AD2d 760 [4th Dept 1993]; 7A CJS, Attorney and Client, § 157; 7 Am Jur 2d, Attorneys at Law, § 184; Annotation, Counsel — Adverse Interests — Civil Case, 31 ALR3d 715, 727 [1970].)
However, there are exceptions to the general rule. It has been held that "since an attorney has the authority and obligation to bring a possible ethical violation to the attention of the court * * * the adverse party may properly move to disqualify the attorney for an opposite party on the ground of conflict of interest.” (7A CJS, Attorney and Client, § 157, at 224; SMI Indus. Canada v Caelter Indus., 586 F Supp 808, 815 [ND NY 1984] [lack of standing argument "must give way to a maxim that adequately addresses the need to ensure both clients and the general public that lawyers will act within the bounds of ethical conduct”]; Vegetable Kingdom v Katzen, 653 F Supp 917, 923, n 4 [ND NY 1987]; Code of Professional Responsibility DR 1-103 [A] [22 NYCRR 1200.4 (a)].)
In Rowe v De Jesus (106 AD2d 284 [1st Dept 1984]) the Court addressed the merits of plaintiff’s motion to disqualify defendants’ law firm from representing multiple defendants even though there was no showing that defense counsel ever represented plaintiff. In Matter of Vera v Gilberg (49 AD2d 883 [2d Dept 1975], lv denied 38 NY2d 709, mot for stay denied 38 NY2d 938 [1976]) the Court held that the disqualification issue could be raised at nisi prius, sua sponte.
In Wagenheim v Pomerantz (NYLJ, July 7, 1970, at 13, col 7 [Sup Ct, Westchester County]) an infant plaintiff passenger in a two-car accident originally sued the owner and driver of one car and not the infant’s father, the owner of the second vehicle. Subsequently, the father was added as a party defendant. Plaintiff’s attorney previously represented the father on matters unrelated to the litigation and may have been retained by him to prosecute the action. Counsel assigned to the father by the insurance company to defend him, interestingly the same carrier as at bar, moved to disqualify the plaintiff’s attorney on the ground that the father may have imparted confidential information to him. The father did not direct the making of the motion and did not actively support it.
Justice Gagliardi recognized the general rule "the motion to disqualify an attorney for alleged adverse interest is the personal right of the former client, which may not be utilized by an adverse party” (supra, at 13, col 8). The court then held that the insurer was the real party in interest in the action and on the motion. It concluded that standing existed in the *435 following language: "In any event, public policy absolutely demands that the principles governing the attorney-client relationship, which involves a high trust, be not weakened (Loew v. Gillespie, 90 Misc. 616, 619, App. Term 1st Dept., Lehman, J., affʼd on op. below 173 App. Div. 889); and the power to compel attorneys to adhere to their professional obligations is of a continuous nature which 'may be exercised at any time when the occasion arises’ (Leviten v. Sandbank, 291 N. Y. 352, 357). Accordingly, the judiciary will not close its eyes when the suggestion of impropriety appears on the record and the issue may be raised sua sponte (Porter v. Huber, 68 F. Supp. 132, W. D. Wash.; Seifert v. Dumatic Industries, 197 A. 2d 454, Pa., see Erie Co. Water Authority v. Western N. Y. Water Co., 304 N. Y. 342, 351, 353; Pomona Enterprises, Ltd. v. Mellen, 30 A. D. 2d 704 [2d Dept.]; Mtr. of Sociedad Maritima [Pangalante Co.], 21 A. D. 2d 43, mot. for lv. to app. den. 14 N. Y. 2d 485; cf. Wysocki v. Prior, 24 A. D. 2d 732, mot. for lv. to app. den. 16 N. Y. 2d 486).” (Supra, at 14, col 1.)
Similarly instructive is Justice Lazer’s opinion in Island PaVin Corp. v Klinger (76 Misc 2d 180 [Sup Ct, Suffolk County 1973], revd on other grounds 47 AD2d 627 [2d Dept 1975]). There, plaintiffs attorney did not make a motion. The court sua sponte raised the conflict of interest issue during trial when defense counsel began cross-examination of plaintiffs witness. The witness had previously been represented by defense counsel on other matters. Justice Lazer granted a mistrial and disqualified defense counsel. He stated: "Since what is involved is a matter of public interest relating to the integrity of the Bar * * * [citing case], the courts, as well as the Bar, have a responsibility to maintain public confidence in the legal profession * * * [citing case]. The exercise of such responsibility cannot be deemed dependent upon the disposition of the parties or their attorneys to press an issue of impropriety by formal motion when the court itself has become aware of its existence.” (76 Misc 2d, at 186, supra.) The reversal was predicated upon the ground that the prior representation of the witness on unrelated matters had ended and, therefore, defense counsel was not representing adverse interests at the time of trial.
A motion to disqualify counsel is addressed to the sound discretion of the court. (Matter of Kelly v Greason, 23 NY2d 368 [1968]; Schmidt v Magnetic Head Corp., 101 AD2d 268 [2d Dept 1984].) The purpose of the Code of Professional Responsibility in situations involving adverse interest representation is to protect clients, ignorant and sophisticated, maintain the in *436 tegrity of the legal system and prevent even honest attorneys from serving mutually antagonistic interests. (7A CJS, Attorney and Client, § 150; see, Moore, Conflicts of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to the Current Confusion and Controversy, 61 Tex L Rev 211 [1982].) "The function of the court on such a motion [i.e., for disqualification] is restricted to the taking of such action as may be necessary to insure a proper representation of the parties and fairness in the conduct of the litigation”. (Young v Oak Crest Park, 75 AD2d 956, 957 [3d Dept 1980].)
Under the totality of circumstances present herein— where the plaintiff clearly has a nexus to the insured as its former employee and is seemingly a third-party beneficiary of the policy in question — the court finds that plaintiff has a cognizable interest to make the subject motion but, in any event, the court sua sponte raises the issue whether defense counsel is improperly serving adverse interests.
DUAL REPRESENTATION — ADVERSE INTERESTS
(The court discussed relevant provisions of the Code of Professional Responsibility and case law concerning dual representation of adverse interests.)

Insured and Insurer

An attorney owes his client undivided loyalty and allegiance. (6 NY Jur 2d, Attorneys at Law, § 70.) ""When counsel, paid by an insurance company, undertakes to represent the policyholder, he owes to his client, the insured, an undeviating and single allegiance. If there is a conflict of interest, he cannot continue to represent both the insurer and the insured.” (Id., at 547-548; Feliberty v Damon, 72 NY2d 112, 120 [1988]; Trieber v Hopson, 27 AD2d 151 [3d Dept 1967]; 1A Carmody-Wait 2d, Officers of Court, § 3:280; 16A Appleman, Insurance Law and Practice, § 8839.35; New York State Bar Assn Opn 73, Mar. 1, 1968; Meiselman, Attorney Malpractice: Law and Procedure, § 19.5.) Often when an insurer retains counsel for the insured, as occurred in the underlying action (the Degroat case [supra]), there is no apparent conflict. However, where an insurer disclaims coverage or reserves the right to do so, it is generally improper for an attorney to represent both the insured and insurer in the same action, as in this declaratory judgment action. (7A CJS, Attorney and Client, § 156; see, Annotation, 31 ALR3d 715, 739-743, op. cit.)
Generally, where some claims alleged in a complaint arguably fall within the coverage of a policy and others are not *437 covered, the insurer must provide a defense to the insured for those claims presumptively within the coverage. (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640 [1993]; Utica Mut. Ins. Co. v Cherry, 45 AD2d 350 [2d Dept 1974], affd 38 NY2d 735 [1975]; 7C Appleman, Insurance Law and Practice, § 4684.01; 70 NY Jur 2d, Insurance, § 1675; 7C Appleman, Insurance Law and Practice, § 4681.) At bar, it appears that the insurer is opting for total exoneration; that is, by reason of the exclusion there is no coverage and no duty to defend the negligence claims since they are wholly premised upon the excluded event of sexual molestation. (U.S. Underwriters Ins. Co. v Val-Blue Corp., 85 NY2d 821 [1995]; Allstate Ins. Co. v Mugavero, 79 NY2d 153 [1992]; New Hampshire Ins. Co. v Jefferson Ins. Co., 213 AD2d 325 [1st Dept 1995]; Krinick, Coverage Issues Dominated Agenda, NYLJ, Oct. 10, 1995, at S10.)
If Simpson, Thacher & Bartlett is successful in this action in establishing the validity of the exclusion in the policy, such success inures to the benefit of Continental Insurance Company, not the School. Furthermore, the contents of the joint answer in this action which alleges that plaintiff committed the acts in question are at distinct variance with the School’s defense in the underlying action. It may be that the judicial admissions herein will be received against the School in the underlying action, even if the School is permitted to separately answer herein. (Bogoni v Freidlander, 197 AD2d 281, 291-292 [1st Dept 1994], appeal denied 84 NY2d 803 [1994]; Hirsch Inc. v Town of N. Hempstead, 177 AD2d 683 [2d Dept 1991]; Rifkind v Web 1V Music, 67 Misc 2d 26 [Sup Ct, NY County 1971]; Richardson, Evidence § 217 [Prince 10th ed]; Fisch, New York Evidence § 804 [2d ed]; Annotation, Evidence — Admission in Pleading, 52 ALR2d 516 [1957].)
Explicit in defense counsel’s argument herein is that if sexual molestation occurred, then there is no coverage, a position urged primarily for the benefit of the insurer, and, in the underlying action there is no liability on the part of the School under respondeat superior because Mr. Booth, the School’s employee, was acting on his own and not within the scope of his apparent or actual authority. (Cornell v State of New York, 46 NY2d 1032 [1979]; Milker v City of New York, 36 NY2d 973 [1975]; Stevens v Lankard, 25 NY2d 640 [1969]; Heindel v Bowery Sav. Bank, 138 AD2d 787 [3d Dept 1988]; PJI 2:235, 2:237; 52 NY Jur 2d, Employment Relations, §§ 333, 334; 6A Warren’s Negligence, Assault and Battery, § 3.04 [4]; 17 Causes of Action 647, Cause of Action Against Employer To Recover *438 Under Doctrine of Respondeat Superior For Intentional Torts Committed By Employee [1988].) However, even that salutary result as far as Continental and the School are concerned leaves open the question of the School’s possible liability for negligent hiring, retention or supervision of Mr. Booth. That liability is original, not vicarious. (Haddock v City of New York, 75 NY2d 478 [1990]; Weiss v Furniture-In-The-Raw, 62 Misc 2d 283 [Civ Ct, Queens County 1969]; PJI 2:240; 6A Warren’s Negligence, Assault and Battery, § 3.04 [4] [c]; 6 Causes of Action 2d 745, Causes of Action For Injury or Loss Caused By Negligent Hiring, Supervision or Retention of Employee [1995]; 4 Causes of Action 285, Cause of Action Against Employer For Negligence Hiring of Employee [1983]; cf., Annonio v Balzano, 139 AD2d 943 [4th Dept 1988], lv denied 72 NY2d 806 [1988].)
Furthermore, the prime argument advanced on the merits that the underlying act falls within the policy exclusion leaves the School potentially exposed on the claims that its representatives said insurance coverage existed for sexual molestation claims and in breach of contract for failing to provide such coverage.
In any event, it is clear that an actual conflict exists in the joint representation as evidenced by the legal positions staked out in both actions, which oppose each other. Mr. Booth has always and consistently denied he committed the acts in question. The School agrees with that position in the underlying action. Two investigations by prosecutorial and administrative agencies have resulted in a failure to file charges against Mr. Booth or have exonerated him. Without explanation, the insurer and insured now say Mr. Booth did perform the dastardly acts but offer not one scintilla of evidence to support that allegation. Advantage insurer; disadvantage School.
Under these circumstances, the court concludes that defense counsel is not serving the interests of one of its clients, the School, has taken a position herein on its behalf that is diametrically opposed to the one asserted by the School in the underlying action and is engaged in improper dual representation of antagonistic interests.

Consent

In certain situations, possibly even where an attorney represents adverse interests, consent of the client after full disclosure requires denial of a motion for disqualification. (7A CJS, Attorney and Client, § 156; 7 Am Jur 2d, Attorneys at Law, § 185.) However, sometimes even with full disclosure and *439 consent, the interests represented are so adverse that dual representation is improper. (7A CJS, Attorney and Client, § 154.) "Because an attorney’s joint representation of two adverse parties in a legal proceeding is fraught with potential for irreconcilable conflict, it will rarely be sanctioned even after full disclosure has been made and consent of clients obtained”. (1A Carmody-Wait 2d, NY Prac § 3:278, at 395.) Full disclosure and consent does not insulate an attorney where the conflict in interest affects or appears to affect the attorney’s obligations. (Cardinale v Golinello, 43 NY2d 288, 296, n 2 [1977]; see, Greene v Greene, 47 NY2d 447, 451-452; Matter of Kelly v Greason, 23 NY2d 368, 378, supra.)
An attorney may represent adverse interests only in "exceptional” cases. (Eisemann v Hazard, 218 NY 155, 159 [1916].) That is not this case. While the court will not apply the Code in didactic fashion, it is clear that it is not "obvious” (as required by Code of Professional Responsibility DR 5-105 [C] [22 NYCRR 1200.24 (c)]) that defense counsel can adequately represent the interests of the insurer and insured herein and the court must be wary of potentially collusive legal positions. (Sapienza v New York News, 481 F Supp 676 [SD NY 1979].)
The prophylactic rule against representation of mutually adverse interests cannot be waived in these circumstances. It has been said: "But because the attorney owes fiduciary duties to his client, the profession can and should place limits on the power of a client to waive his rights beyond a minimum level of effective assistance and attorney loyalty * * * In short, at some point a client must lose the power to consent to an attorney’s conflict of interest since the client cannot waive all of the attorney’s professional obligations.” (Note, Developments— Conflicts of Interest, 94 Harv L Rev 1244, 1305 [1981].)
Consequently, even if the School’s consent for Simpson, Thacher & Bartlett to proceed on its behalf, because the School perceived no conflict of interest, could be construed as full consent after disclosure, a dubious proposition, the court rejects such consent, for to give it effect would unduly affect the integrity of the legal process and public interest.
CONCLUSION
No material factual issues have been raised on this motion which requires a hearing. (O’Donnell, Fox & Gartner v R-2000 Group, 198 AD2d 154; Matter of Beiny, 132 AD2d 190 [1st Dept 1987], lv dismissed 71 NY2d 994 [1988].) Simpson, Thacher & Bartlett is disqualified for the foregoing reasons from represent *440 ing the School. Since there is no allegation that Simpson, Thacher & Bartlett obtained confidential information from the School, it may continue to represent the insurer in this matter.
The School shall retain counsel of its own choice (other than Simpson, Thacher & Bartlett) to represent it in this action, the reasonable expenses thereof, including attorney’s fees, to be paid by the insurer. (Public Serv. Mut. Ins. Co. v Goldfarb, 53 NY2d 392, 401, and footnote; Wiley v New York Cent. Mut. Fire Ins. Co., 210 AD2d 829 [3d Dept 1994].)

. A review of the County Clerk’s file in the Degroat action indicates that a complaint alleging sexual assaults was served, which named only the School.

. The County Clerk’s file in the Degroat action reveals that Booth’s attorneys (the predecessor of the law firm representing him as plaintiff in this action) served an answer and otherwise participated in pretrial activity. The answer denies the essential allegations, as Mr. Booth has done by affidavit, and contains a cross claim against Mr. Doonan.

. In an affidavit in the Degroat action, Mr. Booth stated that he had been employed part time by the School from 1981 to 1990, earned $14,000 annually, was a "Night Cottage Parent” and "Dorm Parent”, has a Master’s degree in social work, was reinstated after the District Attorney refused to file charges and voluntarily resigned thereafter in 1990.

. The Degroats and Doonan were not served with copies of the motion initiated by order to show cause because the court considered that they had no legal interest in the outcome of the disqualification motion. (CPLR 2103 [e].) However, Degroat’s attorney was aware of the subject motion and had an opportunity to state his clients’ position at a conference with the court. Doonan has not been served with process yet.