**INTERTEX TRADING CORP., Plaintiffs,**

**v.**

**IXTACCIHUATL S.A. DE CV, Industrias Quiltex S.A. de CV, Defendants.**

**No. 08 Civ 9568.**

United States District Court, S.D. New York.

Dec. 1, 2010.

Kenneth Roy Schachter, Sills Cummis & Gross, P.C., New York, NY, for Plaintiffs.

Andrew Lee Morrison, K & L Gates LLP, New York, NY, for Defendants.

### Order

WILLIAM G. YOUNG, District Judge.[1]

## I. PROCEDURAL POSTURE

At an oral hearing on October 19, 2010, this Court denied the motion of Ixtaccihuatl S.A. DE CV ("Ixtaccihualtl") and Industrias Quiltex S.A. DE CV ("Quiltex") (together, "Defendants") to dismiss for lack of personal jurisdiction and took under advisement their motion insofar as it was based on the New York State statute of frauds. After careful consideration, this Court grants the Defendants' motion to dismiss on the ground that the Dan River Commission Agreement is a "broker's agreement" whose enforcement is barred by the New York statute of frauds.

## II. INTRODUCTION

On April 18, 2008, Intertex Trading Corp. ("Intertex") filed a complaint against Ixtaccihuatl and Quiltex in the Supreme Court of the State of New York sitting in and for the County of Westchester. Pl.'s Compl., ECF. No. 1, Ex. 1. The Defendants removed the State court action to the United States District Court for the Southern District of New York (White

---

1. Of the District of Massachusetts, sitting by designation.

Plains) pursuant to 28 U.S.C. § 1332. Notice of Removal, ECF. No. 1. On December 15, 2008, Ixtaccihuatl and Quiltex filed a motion to dismiss for lack of personal jurisdiction and a motion to dismiss with prejudice for failure to state a claim based on two separate provisions of the New York statute of frauds. Def's. Mot. Dismiss, ECF No. 7. On January 30, 2009, Intertex filed a Memorandum of Law in Opposition to the Defendants' Motion to Dismiss ("Opposition"). ECF No. 15. Intertex also filed the declaration of its President, Henry Kohn, ("Kohn Decl.") in support of this Opposition. ECF No. 14. On February 20, 2009, Ixtaccihuatl and Quiltex filed a reply to Intertex's Opposition ("Reply"). ECF No. 17.

## A. Facts Alleged

Intertex is engaged in the textile brokerage business. Pl.'s Compl. ¶ 5, Essentially, Intertex introduces and acts as an intermediary between sellers and buyers, earning a sales commission, generally paid by the seller. *Id.* The Defendants are manufacturers of bedding products. *Id.* at ¶ 6.

In the late 1990s, Kohn met the Mosley Group, which consisted of Emilio Mussali Galante ("Galante"), a principal of Ixtaccihuatl, and his cousin Daniel Mussali ("Mussali"), a principal of Quiltex. Kohn Decl. ¶ 5. Through a series of informal and formal negotiations, these three mutually agreed that Intertex would broker deals between its United States contacts and Ixtaccihuatl and Quiltex, and that Intertex would receive commissions on those deals. *Id.*

Accordingly, Intertex introduced Ixtaccihuatl and Quiltex to several United States contacts, namely Arley Corporation, Springs Industries, Inc., Regency Home Fashions, CHF Industries, Kimlor Mills, and whisper Soft Mills (collectively, "U.S. Companies") and received commissions from both Ixtaccihuatl and Quiltex for business they conducted with these U.S. Companies. *Id.* at ¶ 6.

On or about November 29, 2000, Kohn allegedly introduced Ixtaccihuatl and Quiltex to Dan River, Inc. ("Dan River"). Pl.'s Compl. ¶ 8; Kohn's Decl. ¶ 7. On December 8, 2000, and on January 24, 2001, Galante and Mussali discussed with Kohn the potential of doing business with Dan River with Kohn acting as their agent. Kohn's Decl. ¶¶ 7, 8.

In February 2002, Kohn arranged a meeting in Mexico City, Mexico. *Id.* at ¶ 8. There, Kohn discussed with both Galante and Mussali the possibility of being their sales agent regarding the business with Dan River, in exchange for commissions for the business performed. *Id.* Intertex alleges that Kohn later met with Galante and Mussali in New York and that they agreed that Kohn would act as their sales agent for the sale of textiles to Dan River. *Id.* at ¶ 9. In exchange, Intertex would receive a 3% commission on all sales made to Dan River ("Commission Agreement"). *Id.*

From 2002 to 2006, the Defendants placed only one order, on January 14, 2003, with Dan River. Intertex received its commission on February 21, 2003. *Id.* at ¶ 14. As alleged by Intertex, the Dan River Commission Agreement could be terminated at will, by any party, at any time, and the right to commissions would cease upon its termination. Opposition at 2–3. At no time, however, did the Defendants terminate Intertex as their agent. Pl.'s Compl. ¶ 13. Intertex alleges it repeatedly questioned the Defendants as to whether they were conducting any business with Dan River. *Id.* at ¶ 11. Ixtaccihuatl and Quiltex always denied the conduct of any such business. *Id.*

In approximately September 2007, however, Intertex learned that Ixtaccihuatl

and Quiltex had conducted business with Dan River between 2002 and 2007. *Id.* at ¶ 12. In fact, Intertex alleges that between July 25, 2002, and June 6, 2007, Ixtaccihuatl sold goods worth $23,708,069.92 to Dan River. *Id.* at ¶ 15. Intertex also claims that between November 13, 2002, and April 13, 2007, Quiltex sold goods worth $10,783,478.60 to Dan River. *Id.* at ¶ 19. Ixtaccihuatl and Quiltex here allegedly refused and failed to pay Intertex's 3% commission. *Id.* at ¶ 20.

## III. ANALYSIS

### A. Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true. *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

### B. Statute of Frauds

The Defendants argue that enforcement of the Commission Agreement is barred by either section 5–701(a)(1) or 5–701(a)(10) of the New York statute of frauds. The Court addresses each of these arguments below.

#### 1. Section 5–701(a)(1) of New York state General Obligations Law

Section 5–701(a)(1) of the New York statute of frauds provides, in relevant part:

Every agreement, promise or undertaking is void, unless it . . . be in writing . . . if such agreement, promise or undertaking [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of the lifetime.

N.Y. Gen. Oblig. Law § 5–701(a)(1) (2002).

If the Commission Agreement could not have been completed within one year, it will be unenforceable according to section 5–701(a)(1). "[w]here performance is possible, however unlikely or improbable that may be, the agreement does not come within the proscription of the statute." *See Pace v. Perk,* 81 A.D.2d 444, 440 N.Y.S.2d 710, 718 (1981).

The deciding factor in determining the applicability of section 5–701(a)(1) to an agreement to pay commission is the length of time the liability to pay is to run under the contract. If a sales agent is to receive commissions indefinitely on all orders thereafter placed with his principal, even after the termination of his or her employment, then the agreement falls within the proscription of the Statute. *Zaveri v. Rosy Blue, Inc.,* 4 A.D.3d 146, 771 N.Y.S.2d 517, 517 (2004) (holding that an alleged oral agreement obligating the employer to pay the plaintiff commissions on sales made subsequent to termination of his employment was unenforceable under the statute of frauds). Similarly, if the accrual of commission is dependent upon the will of a third party and not upon the parties to the contract, the oral commission agreement is, by its terms, incapable of completion within one year. *McCollester v. Chisholm,* 104 A.D.2d 361, 478 N.Y.S.2d 691, 692 (1984) (holding that a service contract of indefinite duration was not by its terms performable within a year because its "performance is dependent, not upon the will of the parties to the contract, but on that of a third party"). On the other hand, if such commissions do not continue on orders placed after the termination of the employment, where the ter-

mination might occur at any time, then the contract is deemed possible of performance within one year and outside of the statutory prohibition. *Rifkind v. Web IV Music, Inc.*, 67 Misc.2d 26, 323 N.Y.S.2d 326, 332 (N.Y.Sup.Ct.1971).

■ Here, Intertex alleges that the terms of its Commission Agreement with Ixtaccihuatl and Quiltex were as follows: (i) Intertex was to act as the Defendants' sales agent for businesses conducted with Dan River, Kohn Decl. at ¶ 9; (ii) as long as Intertex remained the agent for Ixtaccihuatl and Quiltex, Intertex would earn a 3% commission on all sales made by Dan River, *id.*; (iii) the Agreement was to be terminable "at will, by any party, at any time," Opposition at 2; and (iv) by the terms of the Agreement, when Intertex ceased to act as an agent for Ixtaccihuatl and Quiltex, Intertex's right to commissions would cease as well, Kohn Decl. at ¶ 9.

In the instant case, the Commission Agreement, although of indefinite duration, provided that it was to be terminable at will, by any party, at any time and that, after its termination, the right to commissions would also cease. Hence, the event regulating the termination of the contract—that is, the termination of the agency relationship and subsequent liability to pay commissions—could have taken place within a year, and therefore section 5–701(a)(1) of the statute of frauds does not apply. *See Platt v. Whitelawn Dairies, Inc.*, 3 Misc.2d 19, 150 N.Y.S.2d 391

(N.Y.App.Div.1956). In sum, the Commission Agreement is not barred by section 5–701(a)(1).[2]

## 2. Section 5–701(a)(10) of New York State General Obligations Law

Alternatively, both Ixtaccihuatl and Quiltex allege that Intertex's claims are barred by section 5–701(a)(10), which declares void any oral agreement "to pay compensation for services rendered in negotiating ... the purchase, sale, [or] exchange ... of a business opportunity, [or a] business ...." N.Y. Gen. Obligl. Law § 5–701(a)(1)(10). Def's Mem. in Supp. of Mot. to Dismiss at 14–15, ECF No. 17; Reply at 2–7. Intertex, on the other hand, claims that the Commission Agreement was not a "blanket commission agreement" or one for a "finder's fee." Opposition at 5. Rather, according to Intertex, Intertex was to act as Ixtaccihuatl and Quiltex's sales agent in their dealings with Dan River. Kohn Decl. at ¶ 9. Regardless of the label Intertex puts on the services rendered, this Court must determine whether Intertex's alleged activities amounted to a "negotiation" of a "business opportunity." *See* N.Y. Gen. Obligl. Law § 5–701(a)(1)(10). The term " '[n]egotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction." *Id.*

■ Here, Intertex characterizes itself as being in the textile brokerage business. Pl.'s Compl. ¶ 5. It introduces buyers and sellers and receives a commission on each

2. The case at bar, as pleaded by Intertex, is distinguished from the cases cited by Ixtaccihuatl and Quiltex. *See, e.g., Levine v. Zadro Prods. Inc.*, No. 02 Civ. 2838, 2003 WL 21344550, at *4–5 (S.D.N.Y. June 9, 2003); *Zupan v. Blumberg*, 2 N.Y.2d 547, 550, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957); *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 457, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984); *Korff v. Pica Graphics, Inc.*, 121 A.D.2d 511, 504 N.Y.S.2d 17, 17

(N.Y.App.Div.1986). Indeed, the alleged Dan River Commission Agreement is not dependent on the actions of a third party (unlike *Levine*, 2003 WL 21344550, at *4–5, and *Zupan*, 2 N.Y.2d at 548–50, 161 N.Y.S.2d at 428–29, 141 N.E.2d 819), and Intertex's alleged right to commissions does not survive its termination (unlike *D & N Boening, Inc.*, 63 N.Y.2d at *457–58, 483 N.Y.S.2d 164, 472 N.E.2d 992).

order brokered between the two. Kohn Decl. ¶ 3. Particularly, as to the transactions at issue here, Intertex claims to have introduced Ixtaccihuatl and Quiltex to Dan River. Pl.'s Compl. ¶ 8. Intertex also claims to have arranged meetings between Ixtaccihuatl, Quiltex, and Dan River. Pl's Compl. ¶ 8. In one of those meetings, it is alleged that Intertex, Ixtaccihuatl, and Quiltex reached an agreement by which Intertex would act as an agent for the sale of textile goods by Ixtaccihuatl and Quiltex to Dan River, in exchange for a 3% commission. Pl's Compl. ¶¶ 7, 9. Concerning this Commission Agreement it is undisputed that there is no writing sufficient for the statute of frauds.

The facts, as pled by Intertex, bring the Dan River Commission Agreement within the scope of section 5–701(a)(10) of the statute of frauds which requires a writing for a contract regarding "procuring an introduction to a party to the transaction" and "assisting in the negotiation or consummation of the transaction." N.Y. Gen. Oblig. Law § 5–701(a)(10). Indeed, the New York Court of Appeals held that "where ... the intermediary's activity is so evidently that of providing 'know-how' or 'know-who',[3] ... the statute is entitled to be read both in accordance with its plain meaning, its evident purpose, and to accomplish the prevention of the mischief for which it was designed." *Freedman v. Chemical Const. Corp.*, 43 N.Y.2d 260, 267, 401 N.Y.S.2d 176, 372 N.E.2d 12 (1977). *See also Bronner v. Park Place Entertainment Corp.*, 137 F.Supp.2d 306, 311 (S.D.N.Y.2001) (holding that an oral commission agreement for procuring introduction to Indian tribe, assisting in negotiation and consummation of a business opportunity between the developer and the Indian tribe, in exchange for a 2% commission was unenforceable under the statute of frauds). Furthermore, the fact that Intertex is allegedly acting as a "sales agent" does not suffice to take the Commission Agreement outside the purview of the statute of frauds.[4] In *Goldmark Assocs., Inc. v. Technical Erectors, Inc.*, No, 87 Civ. 5018, 1990 WL 89369, at *4–5 (S.D.N.Y. June 18, 1990), the court held that an agreement providing "an exclusive sales representative" a commission of 7% of the total contract price was covered by the New York statute of frauds because the alleged activities of the representative, including bidding projects, transmitting documents and specifications, and negotiating purchase orders, "[fell] squarely within the scope of the statute as a 'finder' or 'broker,' " irrespective to his job title.[5] Similarly, in *Belotz v. Jefferies*

---

3. Essentially, the alleged services provided by Intertex under the Commission Agreement translate into: (i) introducing potential buyers ("know-who"); (ii) arranging meetings; and (iii) participating in business negotiations ("know-how"), all in exchange for a commission.

4. According to the New York Law Journal:

Section 5–701(a)(10) has been applied in a wide variety of situations.... It applies to purported agreements to compensate a plaintiff for obtaining customers for the defendant.

There are some exceptions to Section 5–701(a)(10).... The statute ... has been held not to apply to claims by 'co-finders,' joint ventures and employees. Perhaps not surprisingly, plaintiffs have attempted to label themselves so as to fall within one of these exceptions. However, the courts look behind the labels and evaluate the type of services the plaintiff performed in order to determine whether the Statute of Frauds applies.

See Richard H. Wagner, Untangling Deals, Agents and Frauds, N.Y.L.J. vol. 226, no. 19, col. 1 (July 27, 2001).

5. *Goldmark* defined finders and brokers in the following way: "Finders find potential buyers or sellers, stimulate interest, and bring the parties together, whereas brokers bring the parties to an agreement on particular terms." *Goldmark Assoc.*, 1990 WL 89369 at *4.

& Co., Inc., No. 98 Civ. 2587, 1999 WL 587916 (S.D.N.Y.1999) the court held that "[n]o matter what label plaintiff puts on the services rendered .... his allegations in the amended complaint and the words of his own deposition testimony put him squarely within the Statute of Frauds.... The Statute of Frauds is clearly applicable here where plaintiff has contributed to 'negotiating the purchase [or] sale....'" *Id.* at *2 (internal citations omitted). Therefore, this Court concludes here that the Commission Agreement was for Intertex to provide alleged "know-who" and "know how" in bringing together Ixtaccihuatl and Quiltex and Dan River. Thus, Intertex's claims are barred by section 5–701(a)(10) of the statute of frauds because they rest on an alleged oral agreement whereby Intertex supposedly "procur[ed] an introduction" for the Defendants. *See* N.Y. Gen. Oblig. Law § 5–701(a)(1)(10).

### C. Unjust Enrichment Claim

■ Intertex claims that Quiltex and Ixtaccihuatl will be unjustly enriched if the Commission Agreement is not enforced. it is well settled in New York, however, that a plaintiff may not assert an unjust enrichment claim to circumvent the statute of frauds. *See Minichiello v. Royal Business Funds Corp.,* 18 N.Y.2d 521, 525, 277 N.Y.S.2d 268, 223 N.E.2d 793 (1966) (holding that section 5–701(a)(10) "make[s] clear that the contracts required to be evidenced by writing include a contract or agreement for the compensation of a business broker ... and that the requirement cannot be avoided by an action for compensation in quantum meruit") (quoting N.Y. Legis Doc., 1964, No. 65(f)); *Tower International, Inc. v. Caledonian Airways, Ltd.,* 133 F.3d 908, 1998 WL 3614, *3 (2d Cir.1998) (table) (noting that, in order to succeed on an unjust enrichment claim, the plaintiff has to prove the common law elements of unjust enrichment and that the writing requirement of the statute of frauds is satisfied); *Zeising v. Kelly,* 152 F.Supp.2d 335, 345 (S.D.N.Y.2001) ("Plaintiff cannot simply restate his contract claim, which is barred by the Statute of Frauds, in an attempt to obtain damages in a quasi-contractual claim."). Thus, based on this rule, Intertex may not simply rely on the doctrine of unjust enrichment to recast a contract action that would otherwise be barred by the statute of frauds.

### IV. CONCLUSION

Concerning section 5–701(a)(1) of the New York: statute of frauds, this Court holds that the Dan River Commission Agreement could have been performed within one year and, therefore, is not statutorily barred. Concerning Section 5–701(a)(10) of the New York statute of frauds, this Court holds that the Dan River Commission Agreement is, in fact, a broker's agreement to negotiate a "business opportunity" that falls within the statutory bar to enforcement. Thus, based on section 5–701(a)(10), the Court GRANTS WITH PREJUDICE the Defendants' motion to dismiss, ECF No. 7, for failure to state a claim upon which relief can be granted.

**SO ORDERED.**