IN THE UTAH COURT OF APPEALS

----ooOoo----

Beverly Jean Black Davis, and Estate of
Richard Davis,

   Plaintiffs and Appellants,

v.

Greg Sperry; Red Slab, LLC; and Provo
City Corporation,

   Defendants and Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

OPINION

Case No. 20110643-CA

F I L E D
(October 4, 2012)

2012 UT App 278

-----

Fourth District, Provo Department, 000403760
The Honorable James R. Taylor

Attorneys: James A. Boevers and Michael N. Zundel, Salt Lake City, for Appellant
    Jody K. Burnett and Dennis C. Ferguson, Salt Lake City, for Appellee
    Provo City Corporation
    Jamis M. Gardner and Thomas W. Seiler, Provo, for Appellee Greg
    Sperry
    Steven W. Allred, Salt Lake City, for Appellee Red Slab, LLC

-----

Before Judges Davis, McHugh, and Roth.

DAVIS, Judge:

¶1     Beverly Jean Black Davis appeals on behalf of the Estate of Richard Davis[1] from the trial court's grant of summary judgment in favor of Greg Sperry; Red Slab, LLC; and Provo City Corporation (collectively, Defendants). We reverse and remand.

BACKGROUND

¶2     "[W]e note that in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake Cnty.*, 855 P.2d 231, 233 (Utah 1993). We recite the facts accordingly.

¶3     In accordance with a verbal partnership agreement between Davis and Sperry, the two men purchased property together in Rock Canyon in Utah County (the Property) on April 20, 1998. The sale price of $150,000 was divided into two payments of $75,000, with the first payment due at closing and the rest due on April 10, 1999. Davis and Sperry each contributed $37,500 for the first payment and took title to an undivided 50% interest in the Property in their own names but "on behalf of the partnership." In May 1998, Davis and Sperry formed Rock Canyon, LLC with the intent of transferring to it "the partnership assets and liabilities," including title to the Property. Title to the Property, however, was never transferred to Rock Canyon. In April 1999, before the final payment of $75,000 for the Property was due, Davis discussed with Sperry the prospect of buying out Sperry's partnership interest. Davis paid the entire $75,000 final payment, believing that doing so constituted a buyout of Sperry's interest in accordance with their earlier discussion.

¶4     However, just days after the purported buyout, Sperry conveyed half of his undivided 50% interest in the Property to Stephen Kapelow by special warranty deed and timely tendered payment of his $37,500 share of the final $75,000 due to the sellers of the Property. The sellers refused Sperry's payment because Davis had already paid the entire $75,000 balance. Davis likewise refused to accept $37,500 as reimbursement.

---

[1]This court granted Mrs. Davis's motion to substitute herself, in her capacity as the representative of the Estate of Mr. Davis, as the plaintiff/appellant in this case in light Mr. Davis's death during the course of this appeal. For simplicity, however, the references to "Davis" throughout this opinion refer to Mr. Davis, rather than his estate or Mrs. Davis and her capacity as the estate's personal representative.

¶5     Davis subsequently dissolved the partnership in light of Sperry's conveyance to Kapelow, which Davis considered a violation of a term of their verbal partnership agreement because he understood the agreement as prohibiting one partner from unilaterally conveying partnership property. In November 2000, Davis filed a complaint against Sperry and Kapelow, alleging wrongful conveyance of the partnership property and wrongful dissolution of the partnership by way of Sperry's wrongful conveyance.[2]

¶6     In April 2004, Kapelow conveyed his interest to Design West, LLC, in which he and his wife, Loren Kapelow, were principal owners and agents. On June 25, 2004, Sperry and Design West entered into an option agreement with Provo City "by which they granted Provo City an option to buy their respective interests in [the Property]" by August 4, 2004. Prior thereto, however, on or about June 17, 2004, the parties' attorneys—Richard Hill for Sperry and Design West and Camille Williams for Provo City—"verbally agreed to extend the August 4 deadline[] for exercise of the option[] to August 16[, 2004]." On August 5, 2004, Provo City assigned its interest in the option to Red Slab, LLC, and Red Slab exercised the option the same day.[3] Sperry accordingly conveyed his record interest to Red Slab, but Design West rejected Red Slab's attempt to exercise the option as untimely.

¶7     Fifteen months later, on November 23, 2005, Davis filed an amended complaint adding Loren Kapelow, Design West, Red Slab, John L. Valentine (manager of Red Slab), and Provo City as defendants, and raised several additional causes of action against the added parties. All claims against Valentine in his individual capacity were ultimately dismissed without prejudice by stipulation of the parties. Design West and the Kapelows settled with Davis, conveying "to Davis all of their right, title and interest in and to the Option Agreement, and all claims and defenses they may have in the Red

---

[2]Davis also raised an intentional misrepresentation cause of action in his complaint, which is not at issue on appeal.

[3]On August 5, 2004, Red Slab also conveyed to Provo City a conservation easement that Davis contends "prohibit[s] mining with respect to Red Slab's . . . 50% undivided interest in the entire Property." The issues surrounding the scope of the easement are not currently before this court.

Slab Lawsuit[4],” and all of Design West’s “right, title and interest in and to” the Property in exchange for the dismissal with prejudice of Davis’s claims against them.

¶8     The remaining defendants—Sperry, Red Slab, and Provo City—filed motions for summary judgment. In its Memorandum Decision addressing those motions, the trial court assumed the existence of a valid verbal partnership agreement between Davis and Sperry but noted that the partnership “relationship and those obligations remain[ed] incapable of determination by summary judgment.” The trial court nonetheless upheld Sperry’s conveyances to Kapelow and Red Slab, ruling that without a written restriction to the contrary, Sperry’s acquisition of a written grant of fee title from the original sellers of the Property “included the ability to convey the property.” The trial court further determined that “Davis gained no additional right to the [P]roperty by paying the promissory notes early” and presumed that Davis’s actions were taken “to protect the [P]roperty . . . for the benefit of all other cotenants, creating only a right to contribution,” despite Davis’s contrary statements regarding the buyout agreement with Sperry. Last, the trial court determined that the option agreement was ambiguous and that extrinsic evidence was necessary to clarify the ambiguity. Hill and Williams testified that they had verbally agreed on June 17, 2004, that the August 4 deadline “in paragraph 2 [of the option agreement] was a scrivener’s error from earlier drafts” and that the parties intended to establish the deadline in conjunction with the parties’ intent expressed in paragraph 7 of the agreement to establish a “60-day option period” that would begin running “on June 16, 2004, when the second seller signed the option agreement.”[5] The trial court determined that their testimony was uncontradicted and concluded that Red Slab properly and timely exercised the option on August 5.

¶9     Davis appeals the trial court’s ruling, arguing that summary judgment was improper in light of several disputed issues of material fact. Davis also challenges the

---

[4]Red Slab filed a separate lawsuit against Design West and the Kapelows, seeking to compel specific performance of the option agreement, that was ultimately consolidated with the present action.

[5]Defendants argue that the option agreement was signed and executed on June 16, 2004. The notarization stamps on the executed agreement reflect that Sperry signed on June 25 and Design West signed on June 23, while an e-mail sent by Williams implies that Sperry and Design West actually signed the agreement on or around June 16 or June 17, 2004. The trial court adopted Defendants’ assertion but, because this matter comes to us on summary judgment, we do not. *See infra* ¶¶ 21-23.

trial court's legal conclusion that the option agreement was ambiguous, that extrinsic evidence was necessary to resolve the ambiguity, and that Provo City and Red Slab were bona fide purchasers.

ISSUES AND STANDARDS OF REVIEW

¶10    We start our analysis by addressing Defendants' assertion that the trial court incorrectly determined that Davis had standing to pursue his claims. "Determinations of the legal requirements for standing are reviewed for correctness," but "we give deference to the [trial] court on factual determinations that bear upon the question of standing." *Jones v. Barlow*, 2007 UT 20, ¶ 10, 154 P.3d 808.

¶11    Next, we address Davis's challenges to the trial court's grant of summary judgment in favor of Defendants. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We review a trial court's grant of summary judgment for correctness, affording its legal conclusions no deference. *See Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 16, 84 P.3d 1134.

ANALYSIS

I. Davis's Standing

¶12    Defendants contend on appeal, as they did in the proceedings below, that Davis lacks standing to challenge the option agreement. Davis asserts that his standing to challenge the option agreement arises from his claim to Sperry's 50% interest in the Property. We agree with Davis.

¶13    "[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Jones*, 2007 UT 20, ¶ 12 (alteration in original) (citation and internal quotation marks omitted). The traditional test for standing has three parts:

> First, the party must assert that it has been or will be
> adversely affected by the [challenged] actions. Second, the
> party must allege a causal relationship between the injury to
> the party, the [challenged] actions and the relief requested.
> Third, the relief requested must be substantially likely to
> redress the injury claimed.

*Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 8, 207 P.3d 1221 (alterations in original) (citation and internal quotation marks omitted).

¶14    Davis has clearly met the traditional standing test. First, Davis asserts that Sperry's conveyance to Kapelow by way of the breached verbal partnership agreement, and that Sperry's conveyance to Red Slab upon Red Slab's exercise of the option, deprived Davis of his alleged right to Sperry's 50% interest in the Property. Additionally, Design West, having acquired Kapelow's 25% interest, did not transfer that interest to Red Slab because it claimed that Red Slab did not timely exercise the option. Davis then became Design West's successor-in-interest after they settled, leaving Davis in Design West's position to rebut Red Slab's claim under the option agreement to that 25% interest.

¶15    Second, Davis's injury flows from the exercise of the option, as well as the alleged term of the verbal partnership agreement that prohibited Sperry from conveying or encumbering the Property unilaterally. Last, Davis's requested relief, including his request for a lien to be placed on the wrongfully conveyed interest in the Property and reconveyance of the Property to him or the partnership, would redress these injuries. Accordingly, we affirm the trial court's determination that Davis has standing to pursue these claims.

## II.  Propriety of Summary Judgment

### A.  Summary Judgment in Favor of Red Slab and Provo City

¶16    Davis contests the trial court's grant of summary judgment in favor of Red Slab and Provo City, arguing that the option agreement was not ambiguous and that, as a result, the trial court improperly permitted the parties to present extrinsic evidence—the testimony from Hill and Williams—and to rely on that evidence when interpreting the option agreement. Alternatively, Davis argues that "even if the agreement w[as] ambiguous, the evidence the [trial] court used to resolve that

ambiguity is disputed by other evidence in the record." Davis also challenges Red Slab's claim of title by arguing that Red Slab and Provo City were not bona fide purchasers. Finally, Davis contends that the trial court overlooked the import of Utah Code sections 48-1-5 through 48-1-7, regarding partnership law. Davis asserts that these sections clearly require a determination that Sperry's conveyances to Provo City and Kapelow were in violation of the partnership agreement and can therefore be recovered by Davis. We address each issue in turn.

1. Ambiguity of the Option Agreement

¶17    The parties dispute whether the option agreement unambiguously established a date by which Red Slab had to exercise the option. "The basic rule of contract interpretation is that the intent of the parties is to be ascertained from the content of the instrument itself . . . . Each contract provision is to be considered in relation to all of the others, with a view toward giving effect to all and ignoring none." *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990) (omission in original) (citation and internal quotation marks omitted). However, where a contract provision "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies," it will be deemed ambiguous. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 14, 28 P.3d 669 (citation and internal quotation marks omitted). Determining the parties' intent in an ambiguous contract presents a question of fact, *see Plateau Mining*, 802 P.2d at 725, that can be resolved by the presentation of extrinsic evidence, *see West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct. App. 1991).

¶18    Davis contends that the deadline to exercise the option is clearly established in paragraph 2 of the option agreement, which states in relevant part, "EXERCISE OF OPTION: This option to purchase may be exercised by the Purchaser at any time prior to August 5, 2004." Defendants contend that paragraph 7 of the agreement, read together with paragraph 2, "creates an internal ambiguity" as to the deadline. Paragraph 7, in its entirety, states,

> OPTION MONEY: Upon execution of this Option, Purchaser shall pay as "Option Money" the sum total of ten thousand dollars as follows: two thousand five hundred dollars to each Seller for each 30-day period of the *60-day option, with the option period beginning on the day both Sellers return the executed agreement to Purchaser*, (two thousand five

> hundred dollars ($2,500) per each 30-day period to each
> Seller during *the 60-day period of time this option is in effect*),
> with the first payment due at the time both Sellers return the
> executed Agreement to Purchaser. In the event that
> Purchaser exercises the option to purchase the Property
> within the option period or any mutually agreed to
> extension thereof and is not in default in any other terms of
> this Agreement, said Option Money shall apply toward the
> purchase price of the Property at closing. In the event that
> Purchaser chooses not to exercise the option to purchase the
> Property, the option money paid up to the date Purchaser
> notifies Sellers of the decision not to purchase shall remain
> with Sellers.

(Emphases added.)

¶19    Davis argues that this case is analogous to *Lee v. Barnes*, 1999 UT App 126, 977 P.2d 550. In *Lee*, the parties' contract to purchase real estate provided "for the payment of $20,000 'at closing—within 90 days'" in a section labeled, "Method of Payment," while "[i]n the section entitled Settlement Deadline, the [c]ontract provide[d] a specific closing date of 'April 30–97.'" *Id.* ¶ 4. Lee contended "that 'April 30–97' was only a 'target date' for closing" and "that the provision in the Method of Payment section demonstrate[d] that closing need only to occur 'within 90 days.'" *Id.* This court disagreed, concluding that "[t]he unambiguous language of the [c]ontract designates 'April 30–97' . . . as the closing date" and that the "'at closing—within 90 days'" provision "relates only to the terms and timing of payment and does not specify a closing date." *Id.* ¶ 10. Applying *Lee*, Davis argues that paragraph 7's references "to a 60 day option period" that would commence "'on the day both Sellers return the executed agreement to Purchaser,'" merely "provide[] a formula for calculating the option price" and establish "a closing deadline," while paragraph 2 establishes the exercise-by deadline.

¶20    We disagree with Davis's interpretation. Indeed, the terms of the option agreement actually refute Davis's interpretation of paragraph 7. Paragraph 6 of the option agreement provides that "[c]losing shall take place within fifteen (15) days of Sellers' delivery to Purchaser of an acceptable Title Certificate." Thus, because a firm closing date is established in another paragraph of the agreement, the terms of paragraph 7, which say nothing about a closing date, do not provide a closing deadline.

Paragraph 7 does establish a formula to calculate the option price and a schedule by which Provo City is to pay Sperry and Design West the option price, but the terms used to describe that schedule (i.e., "two thousand five hundred dollars ($2,500) per each 30-day period to each Seller during *the 60-day period of time this option is in effect*") imply that the intent of the parties in drafting the agreement was to establish the option's exercise deadline by counting out sixty days from "the day both Sellers return[ed] the executed agreement to Purchaser." (Emphasis added.) Assuming this was the formula by which the parties intended to calculate the exercise deadline, the deadline is still ambiguous because the date that Sperry and Design West "return[ed] the executed agreement to" Provo City is not apparent. Paragraph 2 would have us assume that date was around June 3, 2004, sixty days before the August 4 deadline. But the option agreement indicates that Design West's signatures on the agreement were not notarized until June 23, 2004, and that Sperry's were not notarized until June 25, 2004, refuting the interpretation that August 4 complies with paragraph 7's sixty-days-from-execution formula to set the deadline. Sixty days from these notarization dates would set the option deadline at August 22 or August 24, not August 4. Furthermore, the option agreement also declares in its opening paragraph that the "[a]greement [was] made as of the 23 day of June, 2004." Thus, we agree with the trial court's determination that the option agreement is ambiguous and that extrinsic evidence is necessary to resolve the ambiguity. *See generally Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 770 (Utah 1995) ("[W]hen a contract provision is ambiguous because it is susceptible to more than one reasonable interpretation due to uncertain meaning of terms, missing terms, or other facial deficiencies, extrinsic evidence is admissible to explain the intent of the parties.").

2. Extrinsic Evidence of Intent

¶21    "If a contract is ambiguous and the case was decided on summary judgment, that decision will be upheld only if the undisputed extrinsic evidence regarding the intent of the parties shows that the successful position is correct as a matter of law." *See id.* Davis contends that Defendants' version of the facts "is disputed by other evidence in the record," thereby precluding summary judgment.[6] *See Grow v. Marwick Dev., Inc.*,

---

[6]Davis also contends that the extrinsic evidence that the Defendants offered, namely Hill's and Williams's testimonies, is barred by both "the integration clause in [paragraph] 16 of the [o]ption [a]greement" and the Statute of Frauds. As to the integration clause, Davis contends that Hill's and Williams's testimonies indicates that a

(continued...)

621 P.2d 1249, 1252 (Utah 1980) ("It is a well-settled principle of law that summary judgment can only be granted when there is no dispute as to a material fact."). We agree with Davis that the trial court erred in determining that evidence of the parties' intent regarding the closing date was uncontradicted.

¶22 "It is inappropriate for courts to weigh disputed material facts in ruling on a summary judgment," regardless of whether "the evidence on one side may appear to be strong or even compelling. One sworn statement under oath is all that is needed to dispute the averments on the other side of the controversy and create an issue of fact, precluding the entry of summary judgment." *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 752 (Utah Ct. App. 1988) (citations omitted). Here, Davis's 312-page addendum to his memorandum opposing summary judgment, containing several "sworn statements under oath" disputing the parties' intent, presented sufficient evidence to defeat summary judgment on this issue.

¶23 Davis's submissions, accounting for an entire volume of the record on appeal, include deposition testimony from Loren Kapelow, as the principal owner and agent of Design West, that indicates that her intent was to establish an exercise deadline "before August the 5th," in accordance with paragraph 2; an e-mail dated June 17, 2004, from Loren Kapelow to Hill in which she recognized the option as "expir[ing] on August 5"; an e-mail from Williams to her superior, indicating that Hill, on behalf of his "clients," felt that it would be best to abide by paragraph 2's "any time prior to August 5"

---

[6](...continued)
"side deal" was made that "chang[es] the express terms of the integrated, written [o]ption [a]greement." While it is true that "[w]here a contract is integrated, the parol evidence rule excludes evidence of terms in addition to those found in the agreement," *Lee v. Barnes*, 1999 UT App 126, ¶ 9, 977 P.2d 550 (citation and internal quotation marks omitted), we disagree that Hill's and Williams's testimonies added a new term to the agreement. Rather, their testimonies addressed the intent of the parties. We reject Davis's Statute of Frauds argument for the same reason—Hill's and Williams's testimonies addresses the parties' initial intent regarding the option period, not a "side deal" reached by the parties that should have been "in writing and signed." *See generally* Utah Code Ann. § 25-5-3 (2007) (explaining that the Statute of Frauds provides that "[e]very contract for . . . the sale[] of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing").

deadline rather than amend the executed agreement; an excerpt from a deposition by Williams recognizing that e-mail; an affidavit by Williams indicating that Design West's accountant was in contact with Williams several times between August 3 and August 5 "about the closing"; a letter sent by Williams in response to Design West's immediate opposition to Red Slab's attempt to exercise the option, noting that Design West's accountant seemed to understand the "closing date" to be around August 5; deposition testimony from Hill that could indicate that Loren Kapelow was either confused about the option deadline or that she had always intended the deadline to be before August 5; and Red Slab's notice attempting to exercise the option on August 5, "in accordance with paragraph[] 2." Loren Kapelow's deposition testimony alone is sufficient to contest the issue of the parties' intent. And the credibility of her testimony, or any of the parties' testimony, is not to be weighed on summary judgment. *See id.* Accordingly, we reverse the trial court's grant of summary judgment in favor of Red Slab and Provo City on this ground, and remand with instructions for further proceedings.[7]

B. Summary Judgment in Favor of Sperry

¶24     Davis contends that the trial court also improperly granted summary judgment in favor of Sperry. In particular, Davis argues that there were disputed issues of material fact regarding their partnership relationship and that the trial court resolved at least one factual dispute by making a credibility determination. *See generally Lucky Seven Rodeo*, 755 P.2d at 752 ("It is inappropriate for courts to weigh disputed material facts in ruling on a summary judgment."). We agree.

¶25     The trial court recognized in its November 17, 2010 Memorandum Decision that Davis and Sperry's partnership "relationship and th[e associated] obligations remain incapable of determination by summary judgment" and also noted that "the doctrine of

---

[7]Davis also argues that Loren Kapelow's deposition testimony demonstrates that Hill lacked actual or apparent authority to act on Design West's behalf and that Williams's deposition testimony indicates that Provo City was "on notice" of that. Because of the manner in which we have resolved the intent issue, we do not address this argument and trust that the trial court will exercise its broad discretion in discerning what evidence is relevant and ought to be admitted in resolving the issues on remand. *See generally* Utah R. Evid. 401; *id.* R. 402; *id.* R. 403; *State v. Real Prop. at 633 E. 640 N., Orem*, 942 P.2d 925, 929 (Utah 1997) ("Trial courts have wide latitude in making determinations of relevance, probativeness, and prejudice under rules 401 and 403.").

part performance . . . might save Davis'[s] claim [that he and Sperry had agreed that the partnership property could not be unilaterally conveyed]."[8]  The trial court also stated, "In this lawsuit Davis seeks to recover from Sperry on several theories including claims of misrepresentation, wrongful conveyance, wrongful dissolution of a partnership, wrongful encumbrance and waste of the resources.  Whether he can make out those claims is not presently before the court."  On the issue of whether Davis and Sperry had agreed to a buyout of Sperry's share, and that such a buyout would be effectuated at least in part by Davis paying the entire final $75,000 payment, the trial court concluded that it was "unable to give any credit to Davis'[s] claim on this point" because Davis's affidavit in support of his argument "is self-serving and contradicted by Sperry's almost immediate conveyance to [Kapelow]."

¶26    Notwithstanding the trial court's apparent determination that at least some of Davis's claims against Sperry could not be resolved on summary judgment, the trial court's subsequent Final Order and Judgment granted Sperry's motion for summary judgment in its entirety.  Not only was it improper for the trial court to dismiss the claims it recognized were "incapable of determination by summary judgment," it was also improper for the trial court to make a credibility determination and weigh the disputed evidence presented regarding the buyout issue.  As the trial court itself stated in its March 21, 2006 Memorandum Decision, "'[o]ne sworn statement under oath is all that is needed to dispute the averments on the other side of the controversy and create an issue of fact, precluding the entry of summary judgment.'" (Quoting *id.*).  Accordingly, we reverse the trial court's grant of summary judgment in favor of Sperry and remand with instructions for further proceedings in accordance with this opinion.

### III.  Other Issues

¶27    Davis raises several other arguments as alternatives to defeat summary judgment, namely that Red Slab and Provo City were not bona fide purchasers and that principles of partnership law ought to have governed the trial court's determinations regarding Sperry's conveyances.  We address each argument in turn.

---

[8]The trial court correctly determined that Davis's part performance claim could not be determined on summary judgment given the underlying material facts in dispute. Accordingly, we invite the trial court to address this issue on remand as well, at which time it may find helpful our recent decision of *Wilberg v. Hyatt*, 2012 UT App 233.

A. Red Slab and Provo City's Bona Fide Purchaser Status

¶28    Davis argues that Red Slab and Provo City were not bona fide purchasers because they had actual notice of Davis's claims against the Property. "A bona fide purchaser is one who pays valuable consideration for a conveyance, acts in good faith, and takes without notice of an adverse claim or others' outstanding rights to the seller's title." *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993). "[A]ctual knowledge concerning the pendency of litigation involving the property acquired by [Defendants] subjects them to the results of that litigation in the same way that the constructive knowledge imparted by [a] lis pendens does." *Tuft v. Federal Leasing*, 657 P.2d 1300, 1303 (Utah 1982); *id.* at 1302 ("The recording of a lis pendens serves as a warning to all persons that any rights or interests they may acquire in the interim are subject to the judgment or decree." (citation, emphasis, and internal quotation marks omitted)).

¶29    Davis contends that his argument is supported by uncontested deposition testimony from Valentine (on behalf of Red Slab) and Williams (on behalf of Provo City), which indicates that each party was aware of at least the existence of the lawsuit Davis filed against Sperry, and he argues that knowledge of the contents of Davis's complaint can therefore be imputed. Davis asserted three causes of action in his initial complaint: intentional misrepresentation against Sperry regarding Sperry's ability to pay for his half of the Property's purchase price, wrongful conveyance of partnership property by Sperry to Kapelow in violation of the terms of their partnership agreement, and wrongful dissolution of the partnership by Sperry for breaching the partnership agreement by conveying a 25% interest to Kapelow. Davis's requested relief included the grant of a lien on the Property and reconveyance of the Property. Red Slab and Provo City, however, contend that regardless of the contents of the complaint or Valentine's and Williams's knowledge of such, because Davis conveyed his interest in the Property to a separate entity owned by him (BBRD, LC) shortly after filing his initial complaint against Sperry, Davis's complaint amounted to a series of "unsupported allegations" that were filed "by an individual with no known past or present interest in [the Property]." BBRD did not convey the Property back to Davis until July 23, 2007, more than three years after Provo City and Red Slab became parties to the option and nearly two years after Davis filed his amended complaint, which did not list BBRD as a plaintiff. Davis clarifies that he conveyed only his undivided, undisputed 50% interest in the Property to BBRD, not his claim to the other 50% interest. The trial court determined solely for purposes of ruling on Davis's standing, that Davis "provided at least an arguable construction of the transfer to BBRD which would retain an interest in the property for Davis."

¶30　Because of these disputed facts, this issue cannot be determined on summary judgment.  It is not clear that the notice imputed by Valentine's and Williams's knowledge of Davis's complaint was sufficient to affect the parties' bona fide purchaser status.  Accordingly, to the extent that the resolution of this issue is relevant on remand, we direct the trial court to conduct further proceedings necessary to determine whether Red Slab and Provo City were bona fide purchasers.

B.  Validity of the Conveyances to Kapelow/Design West and Red Slab

¶31　Davis challenges the trial court's determination that "the special warranty deed from Sperry to Mr. Kapelow and the warranty deed from Sperry to Red Slab effectively transferred title," notwithstanding the claims Davis may have against Sperry for wrongful conveyance or wrongful dissolution of partnership.  Davis contends that "this ruling overlooks that the Property was partnership property" and that therefore the partnership was not bound by Sperry's conveyances; the partnership could recover the interests that Sperry conveyed because Sperry made the conveyances without the proper authority.  *See generally* Utah Code Ann. §§ 48-1-5 to -7 (2010)[9] (addressing partnership property, partners as agents of a partnership, and conveyance of partnership property).

¶32　Davis's arguments are not adequately briefed.  An adequate appellate brief "shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on."  Utah R. App. P. 24(a)(9).  Davis dedicates two-and-a-half pages in his opening brief to this argument, using one entire page to quote from the Utah Code and the rest of the space to argue, by implication, that because these sections of the code seem applicable and Defendants did not argue against their application, the trial court's ruling was incorrect.  These statements are unavailing and conclusory.  Davis cannot assume that the application of these sections of the Code is so obvious that he need only mention them on appeal; indeed, the applicability and effect of these sections of the Code to the case at hand is not immediately clear.  To begin with, Davis does not bring this lawsuit on behalf of the partnership or in his capacity as a partner, and it is not obvious whether he can seek relief under these partnership provisions of the Code without having named the partnership in the action.  Furthermore, Davis has failed to address the impact that the dissolution of the partnership may have on his ability to

_____

　　[9]These sections of the Utah Code have been renumbered and amended.  *See* Utah Code Ann. §§ 48-1b-203 to -302 (Supp. 2012).

recover the conveyed partnership property (i.e., Sperry's 50% interest), rather than simply recover against Sperry. *See generally* Utah Code Ann. § 48-1-31 (2010) (outlining partners' rights to contribution from copartners after dissolution of the partnership); *id.* § 48-1-35 (outlining the rights of the partners when dissolution is caused by another partner's acts in contravention of the partnership agreement). Moreover, even assuming these sections of the Utah Code are implicated here, and thereby also assuming that Davis and Sperry's partnership agreement does not violate the Statute of Frauds, discerning the effect of sections 48-1-5 through 48-1-7 requires resolution of disputed factual issues, namely what the terms of the partnership agreement were and whether Kapelow and Red Slab were bona fide purchasers. *See generally id.* § 48-1-7 ("Where title to real property is in the name of one or more but not all of the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property, if the partners' act does not bind the partnership under the provisions of Section 48-1-6(1), *unless the purchaser or his assignee is a holder for value without knowledge*." (emphasis added)); *see also id.* § 48-1-2 (defining "knowledge" under this chapter). Red Slab's bona fide purchaser status cannot be determined on summary judgment, and Davis's briefing regarding Kapelow's bona fide purchaser status is nonexistent. We therefore determine that this argument is inadequately briefed. *See generally State v. Gomez*, 2002 UT 120, ¶ 20, 63 P.3d 72 (discussing inadequate briefing).


CONCLUSION


¶33    The trial court correctly concluded that the option agreement was ambiguous but incorrectly concluded that Red Slab and Provo City's extrinsic evidence of intent was not adequately disputed by Davis. As a result, summary judgment in favor of Red Slab and Provo City was inappropriate. Summary judgment in favor Sperry was also unwarranted because genuine issues of material fact are present. Davis's bona fide purchaser arguments cannot be resolved on summary judgment, and we do not address Davis's arguments regarding the application of the Utah Code sections on partnerships because they are inadequately briefed. Accordingly, we reverse the trial court's grant of

summary judgment in favor of Defendants and remand with instructions for further proceedings consistent with this opinion.[10]

_____
James Z. Davis, Judge

-----

¶34    WE CONCUR:


_____
Carolyn B. McHugh, Judge


_____
Stephen L. Roth, Judge

---

[10]Davis requests attorney fees on appeal consistent with paragraph 14 of the option agreement, which states, "The prevailing party in any legal proceeding brought under or with respect to the transaction described in this Agreement is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." Defendants contend that the attorney fee issue was resolved by the postjudgment stipulation agreement that the parties reached. That stipulation, however, appears to be limited, addressing attorney fees "incurred in this action, *not including* any attorney fees . . . incur[red] after filing of Davis'[s] anticipated notice of appeal in this action." (Emphasis added.) Thus, we see no reason not to grant Davis, as the prevailing party on appeal, "all costs" and "reasonable attorney[] fees" incurred on appeal. On remand, the trial court is to calculate the appropriate amount due, and may take into consideration the terms of the stipulation agreement.