2013 UT App 194

# THE UTAH COURT OF APPEALS

IN THE MATTER OF A CRIMINAL INVESTIGATION

LYNN KENNETH PACKER,
Petitioner and Appellant,

*v.*

UTAH ATTORNEY GENERAL'S OFFICE,
Respondent and Appellee.

Opinion
No. 20110774-CA
Filed August 1, 2013

Third District, Salt Lake Department
The Honorable Deno G. Himonas
No. 100916743

Lynn Kenneth Packer, Appellant Pro Se
John E. Swallow and Laura B. Dupaix, Attorneys
for Appellee
Peggy E. Stone, Attorney for Amicus Curiae

JUDGE WILLIAM A. THORNE JR. authored this Opinion,
in which JUDGES GREGORY K. ORME and JAMES Z. DAVIS
concurred.

THORNE, Judge:

¶1 Lynn Kenneth Packer filed several motions in the district court pertaining to a criminal investigation in which he was the complaining witness. The district court dismissed Packer's motions for lack of standing, and Packer appeals. We agree with the district court that Packer lacks standing, and we therefore dismiss his appeal.

## BACKGROUND

¶2 Packer developed and patented a new lecture capture technology that he was preparing to market in early 2010. In

February 2010, Weber State University (Weber State) solicited bids for a lecture capture equipment system. Packer submitted a bid for the Weber State contract.

¶3      Packer suspected that Weber State's bid process was designed so that only one supplier could submit a successful bid. To investigate this suspicion, Packer submitted a request for documents and other information from Weber State pursuant to the Government Records Access and Management Act (GRAMA), *see* Utah Code Ann. §§ 63G-2-101 to -901 (LexisNexis 2011 & Supp. 2012).[1] Weber State produced some documents in response, but Packer believed that the file he received was incomplete, and in March 2010, he submitted a second GRAMA request to Weber State.

¶4      A few days after he submitted his second GRAMA request, Packer contacted the Utah Attorney General's Office (the Attorney General) to report his suspicion that Weber State was rigging its bid process. The Attorney General began an investigation into the matter, which ultimately developed into a formal criminal investigation. As part of that investigation, the Attorney General subpoenaed both Packer and Weber State pursuant to the Investigative Subpoena Powers Act (the Subpoena Act), *see id.* §§ 77-22-1 to -5 (2012).[2] The Attorney General also obtained secrecy orders pursuant to the Subpoena Act, prohibiting Packer and Weber State from disclosing the substance of their testimony or the evidence they produced.

---

1. The statutes cited in this opinion have not been substantively amended in any way relevant to our analysis since the events giving rise to this case, and we cite the most current version of the statutes for convenience.

2. The Attorney General's subpoena of Packer erroneously identified Packer as a target of the investigation, but it is now undisputed that Packer is not and never was a target. Nevertheless, he complied with the subpoena without objection.

¶5 Upon receiving notice of the criminal investigation, Weber State denied Packer's second GRAMA request pursuant to Utah Code section 63G-2-305(9). *See id.* § 63G-2-305(9) (Supp. 2012) (protecting records under certain circumstances relating to investigations and audits). In September 2010, Packer filed a motion in the district court to narrow the scope of the secrecy order and unseal some of the documents. Packer and the Attorney General stipulated to the bulk of the relief requested in Packer's motion. In March 2011, Packer filed motions seeking to sanction and disqualify counsel for both the Attorney General and Weber State because of an alleged conflict of interest, to have a special prosecutor appointed, and to require the Attorney General to comply with the Subpoena Act by filing descriptions of documents and transcripts of testimony obtained pursuant to its subpoenas.

¶6 Both the Attorney General and Weber State sought to strike or dismiss Packer's motions, arguing that Packer lacked standing to bring the motions. The district court agreed, concluding that Packer did not meet the traditional test for standing because he was not adversely affected by the challenged actions. The district court further concluded that Packer did not meet the alternative standing test because he did not have a real and personal interest in the dispute. Packer appeals the district court's ruling.


ISSUE AND STANDARD OF REVIEW

¶7 Packer argues that the district court erred when it concluded that he lacked standing to pursue the relief he sought in his motions. "'Standing is a question of law that we review for correctness, affording deference for factual determinations that bear upon the question of standing, but minimal deference to the district court's application of the facts to the law.'" *Magna Water Co. v. Strawberry Water Users Ass'n*, 2012 UT App 184, ¶ 6, 285 P.3d 1 (quoting *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 9, 233 P.3d 461).

ANALYSIS

¶8 The district court concluded that Packer lacked standing to bring his motions seeking to require the Attorney General to comply with the Subpoena Act, to disqualify counsel, and to appoint a special prosecutor. "'[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties.'" *Davis v. Sperry*, 2012 UT App 278, ¶ 13, 288 P.3d 26 (alteration in original) (quoting *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808). "'On appeal, a party whose standing is challenged must show that he or she had standing . . . in the original proceeding before the district court.'" *Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 (quoting *Society of Prof'l Journalists, Utah Chapter v. Bullock*, 743 P.2d 1166, 1171 (Utah 1987)); *see also Specht v. Big Water Town*, 2007 UT App 335, ¶ 14, 172 P.3d 306 (dismissing appeal for lack of jurisdiction where appellant lacked standing to bring his action in the district court). Packer argues on appeal that he has standing under both the traditional standing test and the alternative standing test. *See generally Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶¶ 19–20, 36, 148 P.3d 960 (discussing the traditional and alternative standing tests).

I. Traditional Standing

¶9 The traditional test for standing has three parts. *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 8, 207 P.3d 1221.

> First, the party must assert that it has been or will be adversely affected by the [challenged] actions. Second, the party must allege a causal relationship between the injury to the party, the [challenged] actions and the relief requested. Third, the relief requested must be substantially likely to redress the injury claimed.

*Id.* (alterations in original) (citation and internal quotation marks omitted). "The traditional test is often referred to as the 'distinct

and palpable injury' requirement," *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 19, because a party asserting traditional standing must allege "some distinct and palpable injury that gives [him] a personal stake in the outcome of the legal dispute," *id.* (citation and internal quotation marks omitted).

¶10   Here, the district court determined that Packer lacked traditional standing to bring his motions. As to the motion to enforce compliance with the Subpoena Act, the district court concluded that the real objective of Packer's motion was to obtain the documents he had sought in his second GRAMA request and that those documents would remain protected throughout the course of the criminal investigation even if Packer's motion was granted. *See* Utah Code Ann. § 63G-2-305(9) (LexisNexis Supp. 2012) (protecting records under certain circumstances relating to investigations and audits). Therefore, the district court concluded that the relief requested was not "substantially likely to redress the injury claimed." *Hogs R Us*, 2009 UT 21, ¶ 8.

¶11   As to the motions to disqualify counsel and appoint a special prosecutor, the district court observed that the "general rule" is that a person lacks standing to disqualify counsel unless the person has an attorney-client privilege with the attorney to be disqualified. *See Booth v. Continental Ins. Co.*, 634 N.Y.S.2d 650, 653 (N.Y. Sup. Ct. 1995) ("[T]he general rule must be recognized that absent an attorney-client relationship, standing is generally lacking on disqualification motions."); 7A C.J.S. *Attorney and Client* § 175 (2004) ("Generally, only a party who is a client of an attorney who undertakes to represent conflicting interests may be entitled to object to such representation . . . ."). The district court additionally found that Packer "does not allege that he has sustained, or will sustain, an injury as a result of the alleged conflict of interest."

¶12   We agree with the district court that Packer lacks traditional standing. None of his motions allege any "distinct and palpable injury that gives [him] a personal stake in the outcome." *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 19 (citation and internal

quotation marks omitted). To the extent that the motions can be read as an attempt to obtain the documents sought in Packer's second GRAMA request—a reading that Packer objects to on appeal—the district court correctly concluded that the relief sought in Packer's motions would not result in any earlier production of those documents. *See Hogs R Us*, 2009 UT 21, ¶ 8 ("[T]he relief requested must be substantially likely to redress the injury claimed." (citation and internal quotation marks omitted)).

¶13    Packer takes issue with the district court's treatment of his motions as relating solely to his second GRAMA request, arguing that his "'real interest' in connection with the court proceedings is to achieve what his motions sought." However, his motions sought to assert and rectify an alleged conflict of interest between counsel for the Attorney General and Weber State and to require the Attorney General to comply with Packer's interpretation of the Subpoena Act. As Packer is not the target of the criminal investigation, he has no "personal stake in the outcome" of questions pertaining to the Attorney General's or Weber State's choice of counsel or the Attorney General's compliance with the Subpoena Act in this matter. *See Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 19, 148 P.3d 960 (citation and internal quotation marks omitted). Rather, under the circumstances, his motions "amount to 'generalized grievances that are more appropriately directed to the legislative and executive branches of the state government.'" *Society of Prof'l Journalists, Utah Chapter v. Bullock*, 743 P.2d 1166, 1170 (Utah 1987) (quoting *Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983)). Thus, no matter how we read Packer's motions, he lacks traditional standing to seek the relief sought therein.

¶14    Packer does provide some authority for the proposition that an adverse party always has standing to allege a conflict of interest of opposing counsel. *See generally In re Gopman*, 531 F.2d 262, 265–66 (5th Cir. 1976) (allowing the United States to raise a conflict of interest affecting counsel for multiple witnesses in a grand jury investigation); *Booth*, 634 N.Y.S.2d at 653 ("[S]ince an attorney has the authority and obligation to bring a possible ethical violation to the attention of the court . . . the adverse party may properly move

to disqualify the attorney for an opposite party on the ground of conflict of interest." (omission in original) (citation and internal quotation marks omitted)); 7A C.J.S. *Attorney and Client* § 175 (2004) (stating that an adverse party may move to disqualify opposing counsel). Packer argues that the district court inappropriately limited this standing exception to licensed attorneys and persons represented by counsel.

¶15    The district court's ruling did make reference to Packer's status as an unlicensed pro se litigant, stating that the exception urged by Packer "does not apply in this case because Packer is not a party to or target of the investigation, is not a licensed attorney, and is not represented by counsel in this matter." Assuming for purposes of Packer's argument that Utah does grant adverse parties, including unlicensed pro se parties, standing to assert ethical violations by opposing counsel—an issue we do not decide today—we ultimately agree with the district court that such standing is unavailable here because Packer "is not a party to or target of the investigation." In other words, Packer is not an "adverse party" to either the Attorney General or Weber State, *see Booth*, 634 N.Y.S.2d at 653, and is thus not in a position to challenge the qualifications of those parties' choice of counsel.[3]

## II. Alternative Standing

¶16    Packer also argues that he has standing under the alternative standing test, *see Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 36, 148 P.3d 960, sometimes referred to as the public-interest standing doctrine, *see Gregory v. Shurtleff*, 2013 UT 18, ¶ 16, 299 P.3d 1098 ("Our public-interest standing doctrine is not unusual in state jurisprudence."). Parties may gain alternative or

---

3. We also note that Packer has apparently raised the alleged conflict of interest asserted in his motions with the Utah State Bar. That would appear to be the appropriate venue for a non-party to raise complaints relating to compliance with the Utah Rules of Professional Conduct.

public-interest standing "if they can show that they are an appropriate party raising issues of significant public importance." *Cedar Mountain Envtl., Inc. v. Tooele Cnty.*, 2009 UT 48, ¶ 8, 214 P.3d 95.

¶17     Here again, we agree with the district court's ultimate conclusion that Packer lacked alternative standing.[4] As to the motion to enforce the Subpoena Act, the district court relied on its prior characterization of the motion as one actually intended to effectuate Packer's second GRAMA request. The district court reasoned that, regardless of Packer's motion, the GRAMA materials would not be provided until the criminal investigation was dismissed. *See* Utah Code Ann. § 63G-2-305(9) (LexisNexis Supp. 2012) (protecting records under certain circumstances relating to investigations and audits). Accordingly, the district court concluded that Packer was not an appropriate party because he lacked the "personal interest" in the outcome of the motion that is required of one asserting alternative standing. *See Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 38. The district court also concluded that Packer lacked alternative standing to pursue his motions to disqualify counsel and appoint a special prosecutor, reasoning that Packer had no "personal interest" regarding either the conflict of interest alleged in his motions or in his "generalized" concerns about the fairness of the investigation. *See id.* ¶¶ 38–39.

¶18     Again, Packer disputes the district court's focus on the denial of his second GRAMA request as the source of Packer's required "personal interest" in his motions. *See id.* ¶ 38. Instead, Packer argues that his goal was "to achieve what his motions sought," which would be to enforce the Subpoena Act and to enforce the Utah Rules of Professional Conduct by disqualifying counsel and appointing a special prosecutor. For purposes of our analysis today, we accept Packer's characterization of his motions, but we still determine that he lacks alternative standing.

---

4. This opinion is not to be read as establishing that alternative standing is ever available in criminal matters.

¶19    Alternative standing requires a showing that one is "an appropriate party raising issues of significant public importance." *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 35. Even if we accept Packer's implicit argument that the issues he raises in his motions are, at least in a general sense, "issues of significant public importance," Packer fails to demonstrate that he is "an appropriate party" to raise those issues. *See id.* To be an appropriate party, one must "show 'a real and personal interest in the dispute,'" *id.* ¶ 38 (quoting *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983)), and Packer has shown no real and personal interest in the general enforcement of either the Subpoena Act or the Utah Rules of Professional Conduct. Instead, his interest appears to be in enforcing his interpretation of those provisions as the complaining witness and putative victim in this particular case, an issue of much narrower public significance.

¶20    Packer has not demonstrated that he is an appropriate party to litigate, as a general matter, issues of public importance relating to the Subpoena Act or the Utah Rules of Professional Conduct. Although he may have a real and personal interest in the application of those provisions to this particular investigation, we do not consider that narrower issue to be one of "significant public importance" for purposes of the alternative standing test. *See id.* ¶ 35. Accordingly, we agree with the district court that Packer lacks alternative standing.

CONCLUSION

¶21    Packer has not demonstrated that he has traditional standing to seek enforcement of the Subpoena Act or to seek the disqualification of counsel and the appointment of a special prosecutor, nor has he shown that he should be allowed to proceed under alternative or public-interest standing. Accordingly, we agree with the district court that Packer lacks standing to obtain the relief he seeks. Packer's lack of standing deprives us of jurisdiction over his appeal, and we therefore dismiss his appeal for lack of

jurisdiction.[5] *See Specht v. Big Water Town*, 2007 UT App 335, ¶ 14, 172 P.3d 306.

————————

5. Both the Attorney General and amicus curiae Weber State raise additional jurisdictional challenges to Packer's appeal, including the compelling suggestion that Packer could not directly appeal the district court's denial order and was instead required to seek review via a petition for extraordinary relief. *Cf. Burns v. Boyden*, 2006 UT 14, ¶ 6, 133 P.3d 370 (reviewing the denial of a target's motion to quash a subpoena in a criminal investigation on a petition for extraordinary relief under rule 65B of the Utah Rules of Civil Procedure). However, we elect to resolve this matter on the jurisdictional requirement of standing, *see Davis v. Sperry*, 2012 UT App 278, ¶ 13, 288 P.3d 26, and we decline to address the other jurisdictional arguments raised by the Attorney General and Weber State.

Additionally, after oral argument in this case, we received a suggestion of mootness from the Attorney General asking that Packer's appeal be dismissed as moot in light of the closing of the underlying criminal investigation. As we conclude that we must dismiss Packer's appeal for lack of jurisdiction, we have no occasion to entertain the Attorney General's suggestion of mootness.