2018 UT App 25

# THE UTAH COURT OF APPEALS

ZEN HEALING ARTS LLC, JEFF STUCKI, AND LEISA METCALF,
Appellants,
*v.*
DEPARTMENT OF COMMERCE, DIVISION OF OCCUPATIONAL AND
PROFESSIONAL LICENSING,
Appellee.

Opinion
No. 20160241-CA
Filed February 8, 2018

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 120900860

W. Andrew McCullough, Attorney for Appellants

Sean D. Reyes, Stanford E. Purser, and Erin T.
Middleton, Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and JILL M. POHLMAN concurred.

TOOMEY, Judge:

¶1 In 2011, the Division of Occupational and Professional Licensing (DOPL) issued citations and cease and desist orders against Zen Healing Arts LLC, Jeff Stucki, and Leisa Metcalf (collectively, Appellants) for violating the Massage Therapy Practice Act (the MTPA). *See* Utah Code Ann. § 58-47b-102(6) (LexisNexis 2016) (defining the practice of massage therapy); *id.* § 58-47b-501 (providing the scope of unlawful conduct under the MTPA). Stucki was also fined for this violation. Appellants challenged the citations and the Department of Commerce upheld them. Appellants appealed the Department's decision to the district court and sought declaratory judgment as to whether DOPL's rule defining the term "manipulation" (the Rule), as

used in the MTPA, was valid. Although Appellants were not cited under the Rule—because it was not promulgated until 2012—the district court determined that Appellants had standing to challenge the Rule and concluded the Rule was "a valid exercise of DOPL's rulemaking authority."

¶2 Appellants timely appealed, contending the court erred in concluding that the Rule was (1) valid and supported by substantial evidence and (2) constitutional. We conclude Appellants lacked standing to challenge the Rule at the district court and therefore vacate the court's declaratory judgment for lack of jurisdiction. *See Jackson Const. Co. v. Marrs*, 2004 UT 89, ¶ 8, 100 P.3d 1211 (providing that when a motion to vacate is based on a lack of jurisdiction and "jurisdiction is lacking, the judgment cannot stand").[1]

¶3 Zen Healing Arts LLC, doing business as Beaches Bodyworks, is a Utah limited liability company.[2] Beaches Bodyworks provided numerous "relaxation" services, including "light touch" techniques applied to the arms, legs, and backs of the clients. These techniques often involved administering oils. In 2011, DOPL issued a cease and desist order against Metcalf, a Beaches Bodyworks employee, for "performing massages without a license" in violation of the MTPA. *See* Utah Code Ann. § 58-47b-102(6) (providing the definition and scope of the practice of massage therapy). DOPL also issued a cease and

---

1. Although we determine that Appellants did not have standing to challenge the Rule in the district court, we nevertheless have jurisdiction over the appeal. *See Nielson v. Gurley*, 888 P.2d 130, 133 n.3 (Utah 1994).

2. DOPL asserted in its brief on appeal that Beaches Bodyworks is not currently operating as a business. Appellants' reply brief did not address whether Beaches Bodyworks is still in operation.

desist order against Stucki, who operated Beaches Bodyworks, as well as a fine of $800 for hiring unlicensed massage therapists. *See id.*; *see also id.* § 58-47b-501 (providing the scope of "unlawful conduct" under the MTPA including, in relevant part, "practicing, engaging in, or attempting to practice or engage in massage therapy without holding a current license as a massage therapist . . . under this chapter"). Appellants requested a hearing with DOPL and challenged the citations against them. DOPL's presiding officer upheld the citations, and the Department later affirmed DOPL's decision.

¶4    During these administrative proceedings, DOPL enacted the Rule, which provides: "'Manipulation,' as used in Subsection 58-47b-102(6)(b), means contact with movement, involving touching the clothed or unclothed body." Utah Admin. Code R156-47b-102(10). Following the administrative proceedings, Appellants filed a complaint seeking judicial review of the Department's decision. Appellants also sought relief under the Utah Declaratory Judgment Act to declare the Rule as "invalid and of no force or effect, and that [the Rule] is in conflict with Utah statutes on the practice of massage therapy."

¶5    The district court hesitated to address the Rule because it "was not in place when the citations were given" and therefore addressing it "would constitute an advisory opinion." Appellants "nonetheless urge[d] the Court to address the issue because [Appellants], and those similarly situated, are harmed by the MTPA and[] because it is likely that this issue will recur for [Appellants]." Although the court determined it had jurisdiction to address the issue and listed four threshold elements to be satisfied to proceed with a declaratory judgment action, it did not provide specific factual findings as to each element. The court concluded that the citations issued against Appellants were valid because they engaged in light touch massage and received a fee for those services in violation of the MTPA. The court also concluded the Rule was valid because the

definition of "manipulation" merely clarified the MTPA rather than expand its scope.

¶6     Appellants timely appealed. Their appeal focuses entirely on whether the district court erred in concluding the Rule was valid. We agree with DOPL that Appellants have failed to show they have standing to challenge the Rule, because they have not shown that they were "aggrieved" by it. *See* Utah Code Ann. § 63G-3-602(1)(a) (LexisNexis 2016) ("Any person aggrieved by [an administrative] rule may obtain judicial review of the rule by filing a complaint[.]"). DOPL stated that it "doubts whether the Rule has caused or will cause [Appellants] any distinct or palpable injury considering they were cited before the Rule was enacted and Zen Healing Arts is not currently operating." Appellants did not respond to this challenge in their reply brief other than to state that "[t]he Finding by the Court that these particular [Appellants] were validly cited for practicing massage [therapy] without licenses does not rob them of their standing to challenge the Rule." This statement, alone, does not satisfy the requirements needed to assert standing.

¶7     "Standing is a question of law that we review for correctness[.]" *Packer v. Utah Att'y Gen's Office*, 2013 UT App 194, ¶ 7, 307 P.3d 704 (citation and internal quotation marks omitted). "[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Id.* ¶ 8 (alteration in original) (citation and internal quotation marks omitted). Even though Appellants sought relief under the Utah Declaratory Judgment Act, they still "must have standing to invoke the jurisdiction of the court." *See Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (determining that the "statutory creation of relief in the form of a declaratory judgment does not . . . grant jurisdiction to the court where it would not otherwise exist").

¶8    Before a district court can "proceed in an action for declaratory judgment," four requirements must be satisfied: "(1) there must be a justiciable controversy; (2) the interests of the parties must be adverse; (3) the parties seeking relief must have a legally [protectable] interest in the controversy; and (4) the issues between the parties must be ripe for judicial determination." *Id.* (citation and internal quotation marks omitted). Significantly, "[r]equirements (2) and (3) represent the traditional test for standing," which requires claimants to "show that [they have] suffered some distinct and palpable injury that gives [them] a personal stake in the outcome of the legal dispute." *Id.* Our supreme court has held that it is "generally insufficient" for claimants to "assert only a general interest [they] share[] in common with members of the public at large" and instead must satisfy standing requirements in order to seek relief. *See id.* at 1149.

¶9    To establish whether Appellants have standing to sue, "we engage in a three-step inquiry": (1) Appellants must show that they were adversely affected by the governmental action; (2) Appellants must show that they are appropriate parties to challenge the governmental action; and (3), even if Appellants are appropriate parties to challenge the action, they must show that the issue raised is of sufficient public importance. *Id.* at 1150–51. The first step of this inquiry is identical to "the traditional criteria of the plaintiff's personal stake in the controversy." *Id.* at 1150. If this first step is satisfied our inquiry ends and the plaintiff may move forward with the litigation. *See id.* If the plaintiff does not have standing under the first step, then we address the second and third steps of the inquiry, *id.*, referred to as the "alternative standing test." *See Utah Chapter of Sierra Club v. Utah Air Quality Board*, 2006 UT 74, ¶ 35, 148 P.3d 960 (following the *Jenkins* three-step inquiry and holding that even though Sierra Club failed to satisfy the traditional standing test, Sierra Club had standing "under the alternative standing test" as set forth under *Jenkins*).

¶10 First, for traditional standing, Appellants must show that they were "adversely affected by governmental actions," which would establish their personal stake in the controversy, and "whether the relief requested is substantially likely to redress the injury claimed." *See Jenkins*, 675 P.2d at 1150. This is the same showing required by section 63G-3-602, which allows "any person aggrieved by an administrative rule [to] obtain judicial review of the rule by filing a complaint." Utah Code Ann. § 63G-3-602 (LexisNexis 2016); *see also Salt Lake City Corp. v. Property Tax Div. of Utah State Tax Comm'n*, 1999 UT 41, ¶ 11, 979 P.2d 346 (referencing an earlier version of Utah Code section 63G-3-602 and concluding that the term "aggrieved" used therein, does not carry "any special meaning beyond that which inheres in the traditional principle that claimants must be able to show that [they have] suffered some distinct and palpable injury that gives [them] a personal stake in the outcome"(alterations in original) (citation and internal quotation marks omitted)). Here, Appellants were cited and fined for the unlawful practice of massage therapy, but this was the result of a violation of the MTPA and not as a result of a violation of the Rule.[3] Therefore, they have not demonstrated that they have been harmed by the Rule.

¶11 Appellants further implicitly assert that they *will be* adversely affected by the Rule as individuals, not as an employer or employee, by arguing that innocent or innocuous touching would be a violation of the Rule and that "something as simple as a romantic partner who caresses her significant other, followed by that partner buying her dinner to show

---

3. The Department of Commerce's findings of fact and conclusions of law specifically noted: "This holding is not a retroactive application of [the Rule] as [Appellants] argue, but is based on the existing definition of 'practice of massage therapy' in Subsection 58-47b-102(6)."

appreciation, runs afoul of the law."[4] But this argument places Appellants in a position "identical to that of the citizenry at large." *See Jenkins*, 675 P.2d at 1152 (providing that when a claimant's position "is identical to that of the citizenry at large . . . he lacks standing to pursue [the] cause of action").

¶12    Because Appellants have not satisfied the first step, we next address whether Appellants are appropriate parties to challenge the Rule. *Utah Chapter of Sierra Club*, 2006 UT 74, ¶¶ 41–42 (explaining that an appropriate party is one who "has the interest necessary to effectively assist the court in developing and reviewing all relevant and legal factual questions" (citation and internal quotation marks omitted)). This requires courts to determine "whether there is anyone who has a greater interest in the outcome of the case than [the claimant]." *See Jenkins*, 675 P.2d at 1150.

¶13    In *Jenkins*, a Utah citizen and taxpayer sought declaratory judgment "concerning certain aspects of the educational system of the state of Utah and five of its school districts." *Id.* at 1147. In challenging these aspects of the educational system, Jenkins relied on his general status as a "citizen, taxpayer, registered voter and parent" to assert them but made "no claim of a *particularized* injury to himself by virtue of the claimed wrong." *Id.* at 1151. Jenkins requested that he be granted standing "under the rationale that he raise[d] questions of great public interest and societal impact." *Id.* But our supreme court declined to grant

---

4. Appellants have not supported this assertion with any evidence. To the contrary, Appellants directed us to the deposition of DOPL's bureau manager who responded to this assertion by stating that the Rule "defin[es] manipulation as contact with movement of the clothed or unclothed body as it relates to the practice of massage therapy, not as it relates to touching."

him standing because his "claim for standing on [the issue was] predicated solely on the grounds of its public importance," and the pleadings revealed that there were "other potential plaintiffs with a more direct interest in this particular question," such as the residents of the school districts that Jenkins named as defendants. *Id.* Although Jenkins was a parent, our supreme court held that his "position in this situation [was] identical to that of the citizenry at large" and it would "not issue an advisory opinion on this question merely to relieve [Jenkins's] discomfort." *Id.* at 1151–52.

¶14 Appellants' pleadings specifically identified other potential plaintiffs with a more direct interest in challenging the Rule and who are more likely to be cited for violating the MTPA with the Rule now in place.[5] *See id.* at 1151. Throughout the administrative proceedings, the district court proceedings, and in their briefs on appeal, Appellants argue that the Rule was created with the intent to target escorts and other sexually oriented businesses. None of the Appellants have identified themselves as escorts, and Beaches Bodyworks was not identified as a sexually oriented business.

---

5. Although Appellants' brief pointed out that Stucki "submitted written comments objecting to [the Rule]" and "appeared at the hearing at which [the Rule] was discussed and adopted," the written comments do not provide any more reason to suggest that Appellants would be personally aggrieved by the Rule. Appellants failed to explain how these comments, which mimic the arguments made in their briefs on appeal, showed that they had a personal stake in the promulgation of the Rule to give them standing to seek declaratory judgment concerning the Rule's validity. *See Packer v. Utah Att'y Gen's Office*, 2013 UT App 194, ¶ 20, 307 P.3d 704.

¶15    It appears that Appellants attempted to challenge the Rule on behalf of escorts and sexually oriented businesses. "As a general rule, courts do not permit a party to assert the constitutional rights of a third party." *Shelledy v. Lore*, 836 P.2d 786, 789 (Utah 1992) (citing *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)). Appellants also have not met the exception to this general rule because they have not asserted "the presence of some substantial relationship . . . with the third parties"; they have not shown that it would be impossible for those third parties to assert "their own constitutional rights"; and they have not shown "the need to avoid a dilution of [the] third parties' constitutional rights" if standing were not extended. *See id.* at 789. By identifying potential plaintiffs with a more direct interest in challenging the Rule who are likely to provide better, more concrete facts for the district court to make its determination about the constitutionality of the Rule rather than basing its determination on mere hypothetical situations, Appellants have shown that they are not the appropriate parties.

¶16    "If the party is not an appropriate party, the court's inquiry ends and standing is denied." *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 41. When a "claim for standing . . . is predicated solely on the grounds of its public importance, we will not grant [the party] standing when the pleadings reveal other potential plaintiffs with a more direct interest in this particular question." *Id.* ¶ 40 (omission in original) (citation and internal quotation marks omitted); *see also Jenkins*, 675 P.2d at 1151 (declining to grant standing to a plaintiff who relied on his "general status as a taxpayer and citizen and [did] nothing to distinguish him[self] from any member of the public at large" when seeking declaratory judgment concerning "certain aspects of the educational system of the state of Utah and five of its school districts," none of which he was a resident).

¶17    Appellants have not shown that they are the appropriate parties to challenge the Rule, and we therefore do not address

the third step of the inquiry. *See Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 41. Appellants clearly identified appropriate potential plaintiffs with a more direct interest in the outcome of challenging the Rule—escorts and sexually oriented businesses.[6] We therefore will not invoke the standing doctrine of "great public interest and societal impact" to consider the merits of their appeal. *See Jenkins*, 675 P.2d at 1151. And although we decline to extend standing in this case, we note that the Rule could be challenged in the future by appropriate plaintiffs. *See Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 36.

¶18 We conclude Appellants did not have standing to challenge the Rule in the district court and vacate the court's declaratory judgment for lack of jurisdiction.

––––––––––––

6. This is not an exhaustive list of potential appropriate plaintiffs to challenge the Rule.