**2013 UT App 66**

# THE UTAH COURT OF APPEALS

UTAH COMMUNITY CREDIT UNION,

*Plaintiff and Appellee,*

*v.*

MIKE L. ROBERTSON SR.,

*Defendant and Appellant.*

Opinion
No. 20110969-CA
Filed March 14, 2013

Fourth District, Provo Department
The Honorable James R. Taylor
No. 100402192

Mike L. Robertson Sr., Appellant Pro Se
Paul D. Jarvis, James Hansen, and Jordan K. Rolfe,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGES WILLIAM A. THORNE JR.
and STEPHEN L. ROTH concurred.

CHRISTIANSEN, Judge:

¶1      Mike L. Robertson Sr. appeals from the district court's grant
of summary judgment in favor of Utah Community Credit Union
(UCCU). We reverse and remand.

BACKGROUND[1]

¶2    In April 2009, Robertson, who is self-employed, completed an online application for a loan with UCCU in order to purchase real property in Spanish Fork. Robertson read and signed the loan application and submitted copies of income statements for 2007 and 2008 in support of his application. He chose to provide these income statements on an unsigned IRS tax form, specifically Form 1040 U.S. Individual Income Tax. This tax form was not the same as the one he used as his actual income tax return for those years. On the income statements he submitted with his loan application, Robertson represented that his gross adjusted income was $126,168 in 2007 and $109,920 in 2008. For both years, he also submitted an IRS Schedule A form, which indicated his itemized deductions, and an IRS Schedule C form, which indicated his profit and loss from his sole proprietorship business. Pursuant to the loan application, UCCU could have requested additional documentation from Robertson, including actual income tax returns because he was a self-employed borrower, but UCCU did not do so at any time prior to closing on the loan.

¶3    At the closing of the loan on May 28, 2009, UCCU presented Robertson with a page from one of the income statements he had submitted with his loan application. This page represented Robertson's 2008 gross income as $109,920, and Robertson signed the provided statement because it contained accurate information. According to Robertson, he advised the UCCU agent that the information he provided with his application was an income statement and not a tax form. At that time, UCCU notified Robertson that it would transfer its servicing rights for the loan to Wells Fargo, effective in July. The parties then executed a Note and a

---

[1]Because this appeal arises from the district court's grant of summary judgment in favor of UCCU, we recite the facts in the light most favorable to Robertson as the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

Deed of Trust. Paragraph 6 of the Deed of Trust provided that Robertson would occupy the property as his principal residence within sixty days "unless extenuating circumstances exist which are beyond Borrower's control." Paragraph 8 of the Deed of Trust provided that Robertson would default on the loan if "during the [l]oan application process" he "gave materially false, misleading, or inaccurate information or statements to [l]ender . . . [i]n connection with the [l]oan." Paragraph 22 of the Deed of Trust provided for a specific process for the acceleration of the loan following the borrower's default, including notice of the breach and the action required to cure any default.

¶4     After closing on the loan, UCCU attempted to transfer Robertson's loan to Wells Fargo for servicing. On June 10, 2009, the UCCU representative with whom Robertson had worked on his loan application contacted Robertson and indicated that Wells Fargo had obtained Robertson's actual income tax returns from the IRS. As indicated on those income tax returns, Robertson's reported income to the IRS was less than $20,000 for each reported year. UCCU asked Robertson to account for the discrepancy between the income he represented in his loan application and the income he reported to the IRS. Robertson wrote a letter to UCCU, which he later described as follows:

> I wrote a letter regarding [the] income that I earned, the manner in which I filed my taxes, and the deductions that I took to arrive at a taxable income. I clearly stated that the income that was found on the one page income statement was in fact true, honest and accurate.

¶5     In the letter, Robertson also explained that his rationale for reporting less than his actual income to the IRS was based on legitimate deductions that Robertson would take from his gross taxable income. Specifically, Robertson explained that he would calculate his final income on a long form and then would file his actual income tax return on a short form, using the same final

figure from the long form. By using this practice, Robertson claimed that he could avoid IRS audits. However, Robertson found that it was difficult to obtain credit from lenders when utilizing his income tax returns. As a result, Robertson started using the income statements to indicate his "true, honest, and accurate" amount of income. The income statements set forth Robertson's basic deductions but did not indicate the tax writeoffs or the actual annual income that he reported to the IRS.

¶6    In a June 29, 2009 letter, UCCU advised Robertson that it was calling his loan because Robertson had provided misleading income information in the loan application process. Though the letter was sent to Robertson, the notice did not comport with the requirements for default contained in paragraph 22 of the Deed of Trust because it failed to advise Robertson of the steps he could take to cure his alleged default and failed to provide adequate notice of the time in which he could cure his alleged default. Robertson replied to UCCU's letter, stating that he had complied with the Note, that he was not in default, and that the amount that UCCU claimed he owed was incorrect. Robertson continued making his scheduled payments on the Note. In July 2009, Robertson was due to move into the Spanish Fork house but decided not to do so because of the stress the communications with UCCU had created for him. In September, Robertson allowed his daughter and her family to move into the home in order to maintain it. He explained, "The communications from [UCCU] began to create extenuating circumstances that created apprehension and anxieties in me that maybe I could lose the house that I wanted to move into," and "I stopped moving all my stuff from my present house to the new house. I did not know if I would be able to live there. . . . [UCCU] created extenuating circumstance[s] that interrupted my moving into the property and renting my [current other] residence . . . ."

¶7    On November 9, 2009, UCCU initiated nonjudicial foreclosure proceedings against Robertson and recorded a notice of substitution of trustee and a notice of default. In December,

Robertson paid the amount then due under the Deed of Trust in order to cure his alleged default, and he continued making timely payments on the Note. UCCU never held a trustee sale. On May 24, 2010, UCCU wrote to Robertson and asserted that Robertson was in default under the Deed of Trust because he misrepresented his income in the loan application process and because he failed to occupy the property. This letter provided Robertson with the action required for curing the alleged default and sufficient notice of the time in which to cure the alleged default. On May 26, 2010, UCCU recorded a cancellation of notice of default. In June 2010, UCCU filed the present action for foreclosure of the trust deed and breach of contract, among other things.

¶8    Thereafter, UCCU filed a motion for summary judgment. On December 6, 2010, the district court entered a partial summary judgment, ruling that there were no disputed issues and that, as a matter of law, Robertson defaulted under the Deed of Trust by materially misrepresenting information during the loan application process and by failing to occupy the property. However, the district court denied UCCU's motion for summary judgment as to UCCU's request for the entry of a judgment to allow UCCU to sell the property and to award a deficiency judgment from that sale if appropriate because UCCU's June 26, 2009 letter and notice of default "failed to comply with the [Deed of Trust] requirement for acceleration of the balance due." The court granted Robertson's motion for leave to file a counterclaim, although it cautioned Robertson that his some of his claims "may well be rendered moot by the ruling on summary judgment that he has default[ed] under the contract" and that some or all of his other claims may have "specific legal defects."

¶9    Robertson subsequently filed a counterclaim, asserting the above-mentioned claims and six other causes of action. Then, in February 2011, UCCU filed another motion for summary judgment, this time providing a more complete record of its compliance with the notice requirements of the Deed of Trust, including its May 24, 2010 letter. In the same filing, UCCU moved the court to dismiss

Robertson's counterclaims. In a June 1, 2011 memorandum decision, the district court granted UCCU's summary judgment, ruling that Robertson defaulted under the Deed of Trust for the same reasons it had stated in the previous summary judgment proceedings, that UCCU properly accelerated the loan pursuant to the Deed of Trust, and that Robertson failed to cure the default. The court also dismissed Robertson's counterclaims. The court awarded UCCU attorney fees and costs.

¶10　Prior to the court's June 1, 2011 ruling, Robertson had filed his own motion for summary judgment arguing, inter alia, that he had cured the default under the Deed of Trust. The district court heard argument, and in a ruling from the bench, denied Robertson's motion and awarded attorney fees and costs to UCCU. On October 3, 2011, the district court issued a written denial of Robertson's motion for summary judgment and confirmed its June 1, 2011 ruling that had granted UCCU's second motion for summary judgment and awarded attorney fees and costs to UCCU. The court also awarded judgment to UCCU in the amount of $151,384.73. That amount was premised on the principal amount owing on the loan and interest as of May 24, 2010. Robertson appeals that order.

## ISSUES AND STANDARDS OF REVIEW

¶11　Robertson argues that the district court erred in granting UCCU's motion for summary judgment because material issues of disputed fact exist as to whether he misrepresented information during the loan application process and whether he failed to occupy the property due to extenuating circumstances. "Summary judgment is proper if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gudmundson v. Del Ozone*, 2010 UT 33, ¶ 44, 232 P.3d 1059 (quoting Utah R. Civ. P. 56(c)). In our review of the district court's

grant of summary judgment, "'we give the court's legal decisions no deference, reviewing [them] for correctness, while reviewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *See id.* (quoting *Dairy Prod. Servs., Inc. v. City of Wellsville,* 2000 UT 81, ¶ 15, 13 P.3d 581).[2]

ANALYSIS

¶12    Robertson argues that the district court erred in awarding summary judgment in favor of UCCU because there were disputed issues of material fact regarding how much he owed to UCCU, whether he misrepresented material information during the loan application process, and whether he occupied the property.[3]

I. There Is a Disputed Material Fact as to Whether Robertson Submitted Misleading Information with His Loan Application.

¶13    In its motion for summary judgment and on appeal, UCCU contends that Robertson did not dispute that he submitted the income statements in conjunction with his loan application or that he asserted in his loan application that he earned more than $100,000 per year in 2007 and 2008, but that his actual income tax

---

[2]Robertson also challenges the district court's grant of summary judgment on the basis that no discovery has occurred. Because we reverse the court's grant of summary judgment, we do not reach this issue.

[3]Given our disposition of the other issues on appeal, it is unnecessary for us to determine whether the court entered the correct judgment amount. We note, however, that there does appear to be a discrepancy between the amount UCCU asserted Robertson owed, as stated in the affidavit attached to UCCU's second motion for summary judgment, and the judgment amount entered by the district court on October 3, 2011.

returns that he filed with the IRS indicate that he made less than $20,000 per year in those two years. UCCU also points out that, in his own letter to UCCU, Robertson admitted to his practice of providing lenders with income statements that differed from his actual tax returns because he believed that UCCU would not otherwise approve a loan based on the amount of income he declared on his tax returns.

¶14   In opposition to UCCU's motion for summary judgment, and on appeal, Robertson claims that there are genuine issues of material fact as to whether he materially misrepresented information during the loan application process. Robertson insists that the documents he submitted to UCCU in conjunction with his loan application accurately reflected his annual income because the tax form he submitted to UCCU was unfiled and unsigned and thus was not an actual income tax return. He also argues that the particular documents he submitted to UCCU were not material because, if they were, UCCU would have requested an actual tax return before it sold the loan to Wells Fargo. Further, Robertson asserts that at the closing, he was asked to sign "a single page income statement that showed that [he] had an adjusted gross income of $109,920 for 2008." He indicates that before he signed this one-page form, he told the closing agent that "it was an income statement and not an income tax form." He contends, "If the forms are simply an admission of [my] income as [I] portray them to be, then there is no misrepresentation. They are accurate statements of income showing that [I] had the necessary income to make the payments on the loan."

¶15   The district court agreed with UCCU and ruled that Robertson was in default under paragraph 8 of the Deed of Trust because he "gave materially false, misleading, or inaccurate information or statements to [UCCU] . . . in connection with the Loan." The court determined that "[Robertson] knew that the lenders expected tax returns" because he admitted to adopting the practice of providing a "different version of tax returns to lenders

and the IRS" in order to obtain favorable credit. The district court explained,

> The only possible reason for his use of the complete set of IRS forms was to mislead the lender to create the impression that his declaration of income corresponded to his declaration of income to the federal government. The uncontroverted evidence in this case inescapably leads to the conclusion that Robertson intentionally provided material misleading information in support of the loan application in violation of the plain language of the contract.

¶16     In so ruling, the district court inappropriately weighed the conflicting evidence in this matter and found that Robertson's declarations were not credible. In determining whether to grant summary judgment, it is inappropriate for the district court to weigh disputed material facts and make credibility determinations. *See Pigs Gun Club, Inc. v. Sanpete Cnty.*, 2002 UT 17, ¶ 24, 42 P.3d 379 ("A trial court is not authorized to weigh facts in deciding a summary judgment motion, but is only to determine whether a dispute of material fact exists."); *Martin v. Lauder*, 2010 UT App 216, ¶ 14, 239 P.3d 519 ("[W]eighing credibility and assigning weight to conflicting evidence is not part of the district court's role in determining summary judgment.").

¶17     In his declaration in response to UCCU's motion for summary judgment, Robertson did not deny that he utilized the unsigned income statements to obtain the loan because on previous occasions when he submitted an income tax return demonstrating his "taxable income," he had not been successful in obtaining credit. In addition, Robertson states that he told UCCU that the form he signed at the closing at UCCU's request was meant to be only an income statement and not a tax return form. UCCU denies this.

¶18    Robertson alleges that he gave correct, clear, and accurate information about his actual income, and he swore to a statement to this effect. Evaluation of these facts in the light most favorable to Robertson is enough to create a genuine issue of material fact on this issue. Robertson's letter and the fact that he provided different information to the IRS certainly bears on his credibility, but it was not for the district court to determine whether he intended to mislead the bank. *See Davis v. Sperry*, 2012 UT App 278, ¶ 22, 288 P.3d 26 ("'It is inappropriate for courts to weigh disputed material facts in ruling on a summary judgment,' regardless of whether 'the evidence on one side may appear to be strong or even compelling. One sworn statement under oath is all that is needed to dispute the averments on the other side of the controversy and create an issue of fact, precluding the entry of summary judgment.'" (quoting *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 752 (Utah Ct. App. 1988))).

¶19    The facts before the court on summary judgment thus raise questions that are inappropriate for resolution by the district court as a matter of law. *See Uintah Basin Med. Ctr. v. Hardy*, 2008 UT 15, ¶ 19, 179 P.3d 786 ("A district court is precluded from granting summary judgment 'if the facts shown by the evidence on a summary judgment motion support more than one plausible but conflicting inference on a pivotal issue in the case . . . particularly if the issue turns on credibility or if the inferences depend upon subjective feelings or intent.'" (quoting 73 Am. Jur. 2d *Summary Judgment* § 46 (2001))). Robertson is the nonmoving party and is therefore "entitled to the benefit of having the court consider all of the facts presented, and every inference fairly arising therefrom in the light most favorable to him." *See id.* (citation and internal quotation marks omitted); *see also Pigs Gun Club*, 2002 UT 17, ¶ 24.

¶20    Accordingly, we conclude that whether Robertson's income information was false, misleading, or inaccurate, and thus, whether he defaulted under paragraph 8 of the Deed of Trust, are factual issues for the finder of fact to determine. And, though we recognize that it would be appropriate for the district court to have granted

summary judgment on a factual issue "when reasonable minds could not differ in concluding" that he breached the Deed of Trust, *see Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 48, 194 P.3d 956, we cannot say that reasonable minds could not differ here about whether the income information was false, misleading, or inaccurate.

## II. There Is a Disputed Material Fact as to Whether Robertson's Failure To Occupy the Residence Constituted Extenuating Circumstances Beyond His Control.

¶21    Robertson also argues that there were genuine issues of material fact concerning whether his failure to occupy the residence pursuant to paragraph 6 of the Deed of Trust constituted "extenuating circumstances" beyond his control because of the stress caused by the uncertainty of UCCU's communications about his income.

¶22    Paragraph 6 of the Deed of Trust required Robertson to occupy the property as his principal residence within sixty days of the closing of the loan "unless extenuating circumstances exist which are beyond [Robertson]'s control." In his declaration, Robertson asserted that after he received the June 2009 letter from UCCU's attorney calling his loan due, he stopped moving all of his belongings into the Spanish Fork residence. Thus, Robertson does not deny that he did not reside at that residence but rather argues that his failure to do so was due to the extenuating circumstances that arose from the communications with UCCU that had created "apprehension and anxieties in [him] that maybe [he] could lose the house that [he] wanted to move into." UCCU argued that Robertson created any extenuating circumstances himself and, thus, such circumstances were within his control. The district court agreed.

¶23    Like our conclusion that disputed material facts exist as to whether Robertson provided "materially false, misleading, or inaccurate information or statements to [UCCU] . . . in connection

with the Loan," the question of whether there were extenuating circumstances beyond Robertson's control likewise involves disputed material facts. Therefore, we conclude that the grant of summary judgment on the basis that Robertson defaulted when he failed to occupy the residence was inappropriate.

### III. Robertson's Remaining Arguments

¶24 Robertson also argues that the district court erred in ruling that he could not cure his alleged default pursuant to Utah Code section 57-1-31 in a judicial foreclosure action. The nonjudicial foreclosure proceedings undertaken in the first instance by UCCU ended with UCCU's cancellation of the notice of default without any concession that Robertson cured the alleged default. Thereafter, UCCU filed the present action seeking judicial intervention to foreclose the trust deed. *Compare* Utah Code Ann. §§ 57-1-23 to -32 (LexisNexis 2010) (dealing with nonjudicial foreclosures) *with* §§ 78B-6-901 to -909 (LexisNexis 2012) (dealing with mortgage foreclosures and deficiency judgments). Robertson has not adequately briefed or otherwise persuaded us that his payment of the amount then due under the Deed of Trust constitutes a defense to a nonpayment-related default in a judicial foreclosure proceeding. Accordingly, we affirm the district court's ruling.[4]

¶25 As to Robertson's argument that the district court erred when it dismissed Robertson's counterclaims without giving him his "day in court," we decline to address this argument because Robertson failed to raise it with the district court after UCCU moved to dismiss Robertson's counterclaims. Thus, Robertson invited the error he claims on appeal. *See State v. Winfield*, 2006 UT

---

[4]Based upon our determination, we need not reach Robertson's argument that the district court erred in ruling that UCCU's May 24, 2010 default letter provided proper notice pursuant to paragraph 22 of the Deed of Trust.

4, ¶ 14, 128 P.3d 1171 ("[U]nder the doctrine of invited error, we have declined to engage in even plain error review when 'counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings].'" (second and third alterations in original) (quoting *State v. Hamilton,* 2003 UT 22, ¶ 54, 70 P.3d 111)). Robertson also failed to raise this due process argument before the district court after it entered its June 1, 2011 memorandum decision dismissing the counterclaims. *See Espinal v. Salt Lake City Bd. of Educ.,* 797 P.2d 412, 413 (Utah 1990) ("With limited exceptions, the practice of [the appellate courts] has been to decline consideration of issues raised for the first time on appeal.").

CONCLUSION

¶26    We conclude that the district court erred in granting summary judgment in favor of UCCU. While we express no opinion on Robertson's ultimate ability to convince the factfinder that he did not mislead UCCU about his income, his declaration filed in response to UCCU's motion for summary judgment raises a genuine issue of material fact concerning his intent to submit the information he did and concerning whether there were extenuating circumstances that justified his failure to occupy the residence. Accordingly, we reverse the summary judgment and remand for further proceedings.